PARKHILL (UNITED STATES v.). See Case No. 15,994.

PARKHURST (CUNDELL v.). See Case No. 3,477.

---

## Case No. 10,757.

### PARKHURST v. KINSMAN et al.

[1 Blatchf. 488; 8 N. Y. Leg. Obs. 146; Merw. Pat. Inv. 654; 1 Fish. Pat. R. 101.] [1]

Circuit Court, S. D. New York. Oct. Term, 1849. [2]

PATENTS—ANTICIPATION—PRIORITY OF INVENTION—ESTOPPEL—JOINT OWNERSHIP—MECHANICAL SKILL AND GENIUS OF THE INVENTOR.

1. It is not enough, to defeat a patent already issued, that another conceived the possibility of effecting what the patentee accomplished.

[Cited in Johnson v. Root, Case No. 7,409; Roberts v. Dickey, Id. 11,899; Gottfried v. Phillip Best Brewing Co., Id. 5,633; Roberts v. Schreiber, 2 Fed. 864.]

2. To constitute a prior invention, the party alleged to have produced it must have proceeded so far as to have reduced his idea to practice, and embodied it in some distinct form.

[Cited in White v. Allen, Case No. 17,535; Johnson v. Root, Id. 7,409; Potter v. Wilson, Id. 11,342; Ellithorp v. Robertson, Id. 4,408; Reeves v. Keystone Bridge Co., Id. 11,660; Webb v. Quintard, Id. 17,324; Roberts v. Dickey, Id. 11,899; Northwestern Fire Extinguisher Co. v. Philadelphia Fire

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission. Merw. Pat. Inv. 654, contains only a partial report.]

[2] [Affirmed in 18 How. (59 U. S.) 289.]

Extinguisher Co., Id. 10,337; Seymour v. Osborne, 11 Wall. (78 U. S.) 552.]

[Cited in Lamson v. Martin, 159 Mass. 565, 35 N. E. 81.]

3. K., owning one undivided third of a patent, of which P., the patentee, owned the rest, agreed with P. to become jointly interested with him in the business of making and selling machines under the patent. K. stipulating to devote his personal attention thereto, and the profits to be divided according to their respective interests. Afterwards, by a further agreement, K. agreed to discontinue the making of machines, as soon as he should reimburse himself for his advances, and P. was then to have the sole right to make and sell, the profits to be divided as before, and neither party to sell for less than $100 profit on each machine. In a suit in equity brought by P. for an injunction, on the ground that K. had more than reimbursed himself and was still making machines, and for an account of the profits of the machines made and sold under the agreements, K. set up that one S. was the first inventor of what was patented by P., and that P. obtained his patent surreptitiously, and with a knowledge of S.'s improvement, and while S. was engaged in perfecting his machine with due diligence. *Held*, that as the second agreement was made by K. with a full knowledge of the claim of S., and after an opportunity to ascertain all the facts in respect to its merits, K. was estopped from setting up such a defence.

4. The second agreement was not void as being in restraint of trade, or against public policy.

5. An assignment by P. of all his interest in the patent worked a dissolution of the partnership between him and K.

6. A joint interest in a patent does not make those interested partners.

7. An improvement in a burring machine, as patented, consisted of hooked teeth, cut upon rings or plates, and those so arranged upon a cylinder, that the wool or cotton, when taken up by the teeth, would be drawn into the slots between the teeth, leaving the burrs and foreign matter on the surface, to be knocked off by a beater. *Held*, that a change in the form of the teeth, from the gullet form to that of the letter V, so as to make the slots smaller at the bottom, and thus operate better on cotton, was not a substantial change in the construction, but one in degree, which naturally resulted from the working of the machine.

[Cited in Wilbur v. Beecher, Case No. 17,634.]

8. The right of an inventor does not depend upon the questions whether his machine is more or less perfect, or whether slight modifications in the arrangement of the machinery or in the finish of the parts, may or may not better accomplish the end, but upon the question whether the machinery constructed as described in the patent will or will not accomplish the end practically and usefully. Perfecting the machinery by superior skill in the mechanical arrangement and construction of the parts, is but the skill of the mechanic, not the genius of the inventor.

[Cited in Wilbur v. Beecher, Case No. 17,634.]

9. Form of the decree in the case, referring it to a master to take and state the accounts.

[This case is first reported as heard upon the application of the defendant to reduce the amount of bail for which he was held under arrest. Case No. 10,761.]

The bill in this case was filed on the 9th of February, 1847, and set forth, that the plaintiff [Stephen R. Parkhurst] was the original and first inventor of a new and useful "improvement in the machine for picking, ginning and carding wool, hemp, and cotton," and that he obtained letters patent [No. 4,023] therefor on the 1st of May, 1845 [reissued February 12, 1861, No. 1,137]; that on the 22d of May, 1845, he assigned to the defendant [Israel] Kinsman one undivided third part of the patent, in consideration for which Kinsman agreed to pay $2,000 in cash, and to give his note for $1,000 at 90 days, and to loan to the joint business not exceeding $1,000, to purchase machinery, stock, &c., which was to be repaid out of the first profits realized from sales of the machines; that Kinsman further agreed to give his personal attention to the manufacturing of machines under the patent, the expenses of making the machines to be first paid out of the proceeds of sales, and the balance, over and above what might be necessary to carry on the business, to be paid over from time to time to the parties, one-third to Kinsman and two-thirds to Parkhurst; that, on the 9th of February, 1846, a second agreement, under seal, was entered into, whereby Kinsman agreed to discontinue the manufacture of machines as soon as he had made and sold so many that the profits of them, with what moneys had been already received, would amount to a sum equal to his advances, and thereafter the plaintiff was to possess the sole right to manufacture and sell the machines, and either party should sell for less than $100 profit on each machine manufactured; that the plaintiff agreed that he would go on and manufacture the machines as soon as Kinsman should discontinue, and would not sell for a less profit than $100 on each machine, and would pay over to Kinsman one-third of the profits, and the like restriction was to apply to any machines made by the plaintiff before Kinsman discontinued the manufacture. The bill further stated, that Kinsman had made and sold a large number of machines under the contract of the 22d of May, 1845, and had realized large profits on the same prior to the 9th of February, 1846; that, after the agreement of that date, he had made and sold large numbers, for at least $100 profit on each, amounting in all to the sum of $11,650; that Kinsman had applied the whole of the profits to his own use, and had refused to account for them; that the amount remaining due of Kinsman's advances, referred to in the last agreement, did not, at the time, exceed the sum of $2,000; that the plaintiff had been at all times ready to fulfil his part of the agreement; that a large sum of money had become due from Kinsman to the plaintiff, for machines manufactured and sold, which he refused to account for or pay over; that he had made and sold great numbers of the machines, and at large profits, since he had realized more moneys than sufficient to repay all his advances, and was continuing to manufacture and sell the machines in violation of his agreement and of the patent; and that he had been repeatedly applied to for an account, &c., which he had refused. On this bill an injunction was

granted, on the 3d of July, 1847. Afterwards, a supplemental bill was filed, setting forth that Kinsman, after the filing of the original bill and before the granting of the injunction, had manufactured and sold large numbers of machines, and realized large sums of money therefor, and that large sums were still due from purchasers; that all the said moneys had been withheld from the plaintiff, and an account refused; that Kinsman had assigned all his interest in the concern to the defendant Calvin C. Goddard, his clerk, who claimed Kinsman's interest by virtue of such assignment; that the assignment was with notice and fraudulent; and that Goddard was manufacturing and selling machines in collusion with Kinsman, and was insolvent. An account was prayed for. [Case No. 10,-758.] An injunction was issued on the supplemental bill, on the 11th of March, 1848. [Id. 10,760.]

The answer of Kinsman admitted the issuing of the patent to the plaintiff, but insisted that it was void. It averred that a machine constructed according to the specification and drawings was useless, in consequence of a defect in the form of its teeth, in having slots large at the bottom—gullet teeth, instead of teeth in the form of the letter V; that he, Kinsman, was manufacturing machines different from the patented machine, and with teeth of the form above mentioned; that the machines of the plaintiff would only gin wool, and failed to gin cotton; that the plaintiff was not the first and original inventor of the thing patented by him, but that Charles G. Sargent of Lowell, Mass., was, and that his machine was invented on or about the 1st of January, 1843; and that the plaintiff obtained his patent surreptitiously, while Sargent was engaged in perfecting his machine with due diligence, and after the plaintiff had obtained a knowledge of the improvement of Sargent. The answer of Kinsman admitted the agreements set forth in the bill, but insisted that the second one was void, as being in restraint of trade and against public policy. It further averred, that on the 22d of May, 1845, he, Kinsman, assigned one-half of his interest in the patent to James W. Hale; and that, from the 22d of May, 1845, to the 9th of February, 1846, he was engaged in manufacturing and selling the machines jointly with the plaintiff and Hale. It set forth an account of the money expended by him in the business prior to the 9th of February, 1846, and an account of the machines made prior to that time, but claimed that there was no profit in the business, that the amount paid, over receipts, was $7,571.76, and that the sum due him, Kinsman, under the agreement of the 9th of February, 1846, was $7,571.61. It also averred, that the plaintiff had, down to the latter part of the year 1847, failed to make a good machine; that the machine as patented would not gin cotton, and he, Kinsman, had spent much time and money to make it useful for that purpose; that he made the proper form of teeth for cleaning wool, and that that form was vital to the successful operation of the machine; that the plan of Kinsman required 62,208 teeth on a cylinder, while the plaintiff's required only 31,104 upon one of the same size; and that the value of the machine was in the number, but more especially in the form of the teeth. The answer denied that the plaintiff had been ready to account for and pay over one-third of the profits of the machines built by him, or to fulfil the agreements in other respects, and averred that the plaintiff had assigned his interest in the matter. It also denied that anything was due to the plaintiff for profits for making the machines, or that he, Kinsman, had made any machines since the profits were sufficient to repay his disbursements, but admitted that if all the moneys due for machines had been received he would have been repaid. It averred that the machines made by him since the 9th of February, 1846, were made under the invention of Sargent, and that he was not bound to account to the plaintiff for them; that he manufactured machines down to the 29th of June, 1847, but had made none since; that on that day he assigned all his interest in the establishment to Goddard, for the consideration of $15,401.99, but did not include his interest in the plaintiff's patent; and that at that time he had taken steps to get the patent for Sargent's invention.

Hale, who was made a defendant, answered, and admitted the patent, and the assignment of one-third of it to Kinsman, and that the plaintiff was the first and original inventor of the machine. He averred the assignment to him by Kinsman of one-sixth of the patent; that he paid to Kinsman $3,-500 for it; that all the profits he had received was $100; that he had repeatedly applied to Kinsman for an account of the profits of the manufacture and sale of the machines, and had been refused; and he claimed that, on an adjustment, one-sixth of the profits should be paid over to him.

It is not material to set forth the answer of Goddard at large, as it was admitted on the argument that his position in the case, in relation to the plaintiff, could not be distinguished from that of Kinsman. His answer admitted that he was engaged in manufacturing and selling the machines down to the issuing of the injunction on the supplemental bill.

The case was heard on pleadings and proofs.

Seth P. Staples and George Gifford, for plaintiff.

James W. Gerard and Ambrose L. Jordan, for defendants Kinsman and Goddard.

[The complainant's counsel cited 2 Adol. & El. 278; Webst. Pat. Cas. 290–295, and notes; 2 Paige, 146; 13 Wend. 385; 3 Hill, 217;

Webst. Dict. vide "forestalling," "regrating"; 3 Bac. Abr. 261, A, B; Webst. Supp. part in actions, 131, Nos. 78, 85, 113; 2 Johns. Ch. 87; 7 Ves. 530; 2 Ball & B. 385; 2 Daniell, Ch. Prac. 1426; 2 Story, Eq. Jur. §§ 716, 717a.

[The defendants' counsel cited 1 Story, Eq. Jur. § 522; 15 Johns. 179; [Wood v. Under-hill] 5 How. [46 U. S.] 1; 2 Vern. 297; 2 Johns. Ch. 62; Chit. Cont. 664 (Ed. 1842) 665, 667; 7 Bing. 735; 5 Mees. & W. 548; 21 Wend. 166; 1 East, 143, 167; Gods. Pat. 23–31; 2 Johns. Cas. 20; 6 Johns. 194; 8 Johns. 444; 13 Johns. 112; 2 Stew. (Ala.) 175; 2 Kent, Comm. 537; 21 Wend. 166; 2 Story, Eq. Jur. § 769; 4 Paige, 305; 2 Har. & G. 100; 1 Cow. 733; 2 Story, Eq. Jur. §§ 722a, 736; 2 Schoales & L. 552; 7 Ves. 219; 14 Ves. 519; 1 Jac. 422; 3 Term R. 438; 3 Hill, 215; 8 Wend. 483; 2 Paige, 146; 13 Wend. 385; 2 Mass. 46; 2 Rev. St. p. 406, § 77; 11 Wend. 106; 13 Wend. 527; 14 Wend. 195; Bedford v. Hunt [Case No. 1,217]; 4 Burrows, 2397; 2 H. Bl. 467; Phil. Pat. 90; Hind. 87; Cromp. M. & R. 864.] [3]

NELSON, Circuit Justice. The proofs in this case are exceedingly voluminous, embracing the testimony of some fifty witnesses, many of whom were examined at great length upon the several questions presented or supposed to be presented in the pleadings, and upon the final decision of which the valuable interests involved in the subject matter in dispute must depend. I have examined them with all the care and attention which the complicated nature of the evidence necessarily requires, and the importance of the rights concerned demands, and shall proceed at once to state briefly my conclusions upon the facts and the law, so far as they may be material to a final disposition of the case.

1. I am satisfied that the proofs establish, beyond all reasonable doubt, that Parkhurst, the plaintiff in the bill, was the first and original inventor of the improvement in the burring machine, for which letters patent were granted to him on the 1st of May, 1845; that the improvement of Sargent, mainly relied on as anterior in time, was neither so far perfected by experiment, or by a reduction to practical operation, as to entitle it, in judgment of law, to the character or attribute of an invention; and also, that the imperfect and unsatisfactory nature of the experiments made by Sargent, and his subsequent conduct in throwing aside his temporary model, and wholly neglecting for years to follow up his experiments, so as to produce a perfect machine, afford strong and decisive evidence of an abandonment of the thing as a failure.

It is not enough, to defeat a patent already issued, that another conceived the possibility of effecting what the patentee ac-

complished. To constitute a prior invention, the party alleged to have produced it, must have proceeded so far as to have reduced his idea to practice, and embodied it in some distinct form. It must have been carried into practical operation; for he is entitled to a patent, who, being an original inventor, has first perfected the invention and adapted it to practical use. Crude and imperfect experiments, equivocal in their results, and then given up for years, cannot be permitted to prevail against an original inventor, who has perfected his improvement and obtained his patent. Gibson v. Brand, Webst. Pat. Cas. 628; Househill Coal & Iron Co. v. Neilson, Id. 708, 713; Jones v. Pearce, Id. 124; Galloway v. Bleaden, Id. 525, 526; Cornish v. Keene, Id. 508; Hind. Pat. 448, 449; Bedford v. Hunt [supra]; Reed v. Cutter [Case No. 11,645]; Curt. Pat. §§ 40–49.

2. But, if otherwise, and the plaintiff was not the first and original inventor, I am of opinion that Kinsman is estopped from setting up that fact, by force of his agreement of the 9th of February, 1846, whereby he modified and confirmed the previous one of the 22d of May, 1845.

By the first agreement, he acquired an undivided third part of the interest in the patent, and stipulated to become jointly interested with the plaintiff in the business of manufacturing and vending the improved machines, and to furnish a certain amount of capital for that purpose, the profits to be divided according to their respective interests. After carrying on the business under this agreement for some nine months, it was modified by the second one, by which Kinsman agreed to discontinue the manufacture of the machines upon the terms and conditions therein stipulated, and to leave to the plaintiff the sole right to conduct the business of the partnership in future, he agreeing to pay over to Kinsman one-third of the profits. This agreement was entered into with a full knowledge on the part of Kinsman of the claim of Sargent as the original inventor of the burring machine, and after an opportunity to enquire into and ascertain all the facts and circumstances in respect to the merits of such claim.

3. I am further of opinion, that the objections taken to the agreement of the 9th of February, 1846, that it was void, as being in restraint of trade, and against the principles of public policy, are not well founded.

The parties were jointly interested in the patent right, in the proportions of one-third and two-thirds thereof, and had, by the agreement of the 22d of May, 1845, become bound to carry on the business of manufacturing the patented article for the benefit of the joint concern, Kinsman stipulating to devote his personal attention thereto. This was modified by the arrangement of the 9th of February following, whereby the establishment was put under the sole charge

and direction of the plaintiff, subject to certain restrictions as to price, &c., the profits to be paid over according to the respective interests of the parties. This arrangement contained no stipulations in restraint of trade, in the sense of the rule upon which the objection is founded. It simply prescribed the mode of conducting the affairs of the partnership, and was no more or less than an ordinary partnership business arrangement, such as was deemed best for the interest of all concerned. Whether the affairs of the company should be conducted by the advice and personal services of both the partners, or by the one or the other of them, depended upon their own views as to which arrangement would be the most beneficial for their common interests. It was a question they had a right to determine for themselves, and, in whichever way it might be determined, it could in no manner operate in restraint of trade in general, or as respected either of the parties. A joint interest in the patent did not make the parties partners, and some agreement, therefore, became necessary, to enable them to work the invention at their joint expense and for their joint benefit. Hind. Pat. 67, 236. They then became partners in the business of manufacturing and vending the patented article, subject to the rules of law governing parties standing in that relation to each other, except as those rules were modified and limited by the articles of partnership. While the partnership continued, it was an obvious dictate of wisdom to make it a condition, that one of the partners should not be permitted to engage in the same branch of business, to the prejudice of the interest of the common concern. Such a restraint is neither illegal nor unusual in articles of partnership.

4. I am also of opinion, that the change in the form of the slots or teeth cut on the rings or plates which composed the burring cylinder, and which, it is claimed, were made by Kinsman or others subsequent to the date of the patent, and in the course of the manufacturing of the article, was not a substantial change in the construction from that described in the patent.

The improvement consisted of hooked teeth, cut upon the rings or plates, and these so arranged upon the cylinder, that the wool or cotton, when taken up by the teeth, would be drawn into the slots or interstices between the teeth, leaving the burrs and other foreign substances on the surface, to be knocked off by the beater. The form of the teeth that would produce this result, embodied, to this extent, the principle of the improvement. Practice and experience in the working of the machine doubtless led to modifications of the form, highly beneficial, as respected both the quantity and the quality of the article cleaned. This is the natural and usual result in the operation of machinery newly invented and constructed. It requires time and experience to bring it to complete perfection. But, the right of the inventor does not depend upon the questions whether the machine is more or less perfect, or whether slight modifications in the arrangement of the machinery or in the finish of the parts composing it, may or may not better accomplish the end sought to be attained; but upon the question whether the machinery constructed as described in the patent will or will not accomplish the end practically and usefully in the way pointed out. If it will, the inventor is entitled to the protection which the government has granted him; and any one using the principle thus embodied is guilty of an infringement, however he may have perfected the machinery by superior skill in the mechanical arrangement and construction of the parts. Such perfecting is but the skill of the mechanic, not the genius of the inventor.

The proof is full to show, that several of the machines constructed in strict conformity to the description in the patent, and immediately after it was granted, operated well, and are still in use by the purchasers. The shape of the teeth, and of the space between them, best adapted to use in cleaning wool or cotton, is a matter of nice calculation, depending upon various considerations, such as the character and condition of the article, whether coarse or fine, very foul or otherwise, and also the nature of the foreign substances, and necessarily, somewhat upon practice and experience in the business. If the space is too large at the point of the teeth, the dirt will be drawn into them with the wool or cotton; if it is too small at the point, and too wide at the bottom, the space will clog, and embarrass the operation. For this reason, there might well be different opinions as to the precise shape and structure, as there have been, according to some of the witnesses. The teeth must, however, be hooked, so as to catch the wool or cotton and draw it between them and below the surface of the cylinder.

Upon the whole, without pursuing the examination of the case further in detail, I am satisfied that the plaintiff is entitled to an account of the partnership transactions from the 22d of May, 1845, down to the time when he assigned and transferred all his interest in the patent to William L. King, on the 30th of March, 1848. Having then parted with the whole of his interest, he was no longer concerned in the partnership business. The assignment worked a dissolution, and left the parties interested in the patent simply to their rights under it. Perhaps Kinsman might have insisted upon a dissolution from the time of the assignment to King of a part of the plaintiff's interest in the patent, on the 2d of September, 1847, and a closing up of the partnership affairs as they stood at that period; but, as no such step was taken by Goddard,

who then represented the interest of Kinsman, the partnership must be regarded as having continued down to the 30th of March, 1848, and the account is to be taken down to that period. And, as it appears that the plaintiff is no longer interested in the patent, the injunctions heretofore granted in his behalf, in pursuance of the prayers in the original and supplemental bills, must be dissolved, except so far as they restrain Kinsman and Goddard from collecting the partnership debts.

NOTE. The decree was as follows: "Ordered and decreed, that the plaintiff is the first and original inventor of the improvement in the burring machine, for which letters patent were granted to him May 1st, 1845, as set forth in the bill of complaint; that, if otherwise, the defendants Kinsman and Goddard are estopped from denying the fact, by virtue of the agreements of the 22d of May, 1845, and the 9th of February, 1846, also set forth in said bill; that the said agreements are legal and valid, and binding upon the parties Kinsman and Goddard; that the assignment of the whole of the interest of the plaintiff in the patent, on the 30th of March, 1848, to William L. King, worked a dissolution of the partnership which existed between him and Kinsman under the aforesaid agreements; that the burring machines manufactured and sold by Kinsman and Goddard between the 22d of May, 1845, and the 30th of March, 1848, the time of the dissolution, are to be deemed to have been made and sold under the said agreements; that the cause be referred to Charles W. Newton, Esquire, one of the masters of this court, to take and state the partnership accounts which accrued between the parties within the periods above mentioned, under the said agreements; that, in taking and stating the said accounts, the master ascertain and state the number of machines made and sold within the said time by Kinsman and Goddard, or either of them, and the prices for which they were sold, also the amount of monies advanced by the said Kinsman and Goddard, or either of them, in procuring machinery, tools, &c., for the manufacture of the said machines, and for labor, materials, expenses, &c., in the manufacture and sale of the same; and that, in stating the accounts, the master charge said Kinsman and Goddard with at least $100 profit on each and every machine made and sold by them, or either of them, since the 9th of February, 1846; that the master take and state an account with the plaintiff, including monies advanced by him, if any, in procuring machinery, tools, &c., for the manufacture of machines, and for labor, materials, expenses, &c., in the manufacture and sale of machines, and the number made and sold by him between the times aforesaid; that, in stating such account, the plaintiff be charged with at least $100 profit on each and every machine made by him since the 9th of February, 1846; that the master be authorized to require the production of the account books of the parties before him for examination, and the parties to be at liberty to furnish such further evidence in the premises as they may see fit and proper; that the master report to the court his doings in pursuance of the above directions; that all other questions in the case be reserved till the coming in of said report; and that the injunctions heretofore granted be dissolved, except so far as to restrain Kinsman and Goddard from collecting outstanding debts for vending machines prior to the 30th of March, 1848."

[On appeal to the supreme court, the decree of this court was affirmed. 18 How. (59 U. S.) 289. For other cases involving this patent, see Cases Nos. 3,477 and 9,833.]