William Harrigan, complainant and appellant,

v.

Anthony P. Smith, defendant and respondent.

[Filed March 6th, 1899.]

Mere lapse of time before resort to a court of equity to compel an assignment of a part interest in a patent to which a complainant is equitably entitled will not necessarily bar a decree for such relief, but if the delay be great and the circumstances such as to make it inequitable to permit an account of profits to be demanded, an assignment will be decreed only on terms that an accounting be denied.

On appeal from a decree advised by Vice-Chancellor Emery, who delivered the following opinion:

The bill is filed for the specific performance of an agreement for the assignment of a three-sixteenths interest in certain inventions of defendant, for which letters-patent have been granted to him, and for the recovery of a like interest in the profits arising from their manufacture and sale, and for an account of the profits in the business of the manufacture and sale of the patented articles under the patents. The patents issued to defendant were two in number, one dated January 15th, 1889, the other January 21st, 1890. The alleged agreement for assignment was an oral one, and the final agreement, changing in some respects the original agreement, was made, as alleged in the bill and as appears by the complainant's evidence, in the spring of 1891, and included a right to a three-sixteenths interest in the patents then obtained by Smith and in future improvements. Harrison had already paid Smith $400 upon the original agreement made in 1888, and in 1891 the assignment was drawn and tendered to Smith for execution, by directions of complainant, who also offered to pay the additional price. The defendant, according to complainant's statement, while promising to execute the assignment, delayed or neglected to do so, and when complainant, not later than 1891, applied to him to execute the assignment he refused to do so. Smith's statement is that he refused from the first. Smith, after the alleged agreement and after this refusal, continued the manufacture and sale of the patented articles at his own risk and account, built up a business of considerable extent, and complainant made no further application or demand on Smith until the filing of the present bill on January 16th, 1896, after Smith had concluded negotiations for a sale of the patents and business. Complainant now prays an assignment of a three-sixteenths interest of the patents and a like share of the profits. Smith admits in his answer an agreement to convey to complainant an interest in the first patent granted, which agreement was made in December, 1888, pending the application for that patent, but denies that this agreement covered, or was intended to cover, any patent except the one then pending, or that it covered any agreement to share the profits of the manufacture, and denies any agreement either then

or subsequently to convey any interest in the subsequent patent. The first patent is claimed to have been impracticable and to have been practically useless, and has been abandoned, and the entire manufacture and sale of defendant's business is now carried on under the second and subsequent patents.

Upon the question of the existence and terms of the agreement, I am inclined to think upon the whole evidence that the complainant's claim as to the terms of the agreement, so far as relates to the assignment of the patents, is made out and that the agreement to assign did include the subsequent patent. But without deciding this point I reach the conclusion that complainant is not entitled to specific performance in this case, even if the agreement alleged is satisfactorily made out by the evidence. The right of complainant to specific performance is barred by his delay in applying for a specific performance of the contract. Complainant had notice in 1891 that defendant refused to perform the contract alleged to have been made, and if he desired to compel specific performance of the contract complainant was then bound to apply for it without delay, and the delay in filing bill until 1896 is fatal. *Ketcham* v. *Owen, 10 Dick. Ch. Rep. 344,* and cases cited ; *Merritt* v. *Brown, 6 C. E. Gr. 401.* The rule against delay is specially applicable where the subject-matter of the contract is of a speculative and fluctuating value (*Mills* v. *Haywood, 6 Ch. Div. 196*), or is a patent (*New York Paper Bag Co.* v. *Union Paper Bag Co., 32 Fed. Rep. 783*). And if in addition the complainant under the agreement claims, as he does here, a right to share in the profits of the subsequent manufacture, this must be either as partner or joint owner, and under a relation making him liable for the losses and expenses, there is an additional reason for the promptest assertion of his claim to specific performance and *status* of partner or joint owner. Complainant's counsel contend that by payment of a portion of the purchase-money in December, 1888, the defendant became in equity trustee for the complainant in all the patents thereafter issued, and that the statutes of limitations do not apply to the case, because it was an executed and not an executory trust. But the contract between the parties was clearly

of an executory character and contemplated the future execution of a conveyance. The interest of the complainant, therefore, was an executory interest as distinguished from an executed trust, and the case is to be governed by the equitable rules relating to specific performance rather than those relating to executed interests or trusts. The rule against delay is more peremptory on the application for specific performance than in the case of executed trusts. The cases cited by the complainant's counsel, where specific performance of an agreement to convey was decreed after long delay, appear on examination to be cases where the complainant seeking performance had been put into actual possession of the property agreed to be conveyed upon the making of the agreement, and supposed no further assurance was necessary. *New Barbadoes Co.* v. *Vreeland, 3 Gr. Ch. 157, 161 (Chancellor Pennington, 1842).*

A proposal or statement which was made by Smith to complainant after his refusal in 1891 to convey to complainant is relied on as explaining and overcoming the delay. Smith, as he himself testifies, told Harrigan, who had complained to him that he was hard up for money, that he could probably get him some money for his interest. This was after July, 1891, when Smith left the aqueduct board. Before this time Smith had refused to convey an interest in all the patents, but he had not refused to convey to Harrigan an interest in the first patent, nor had such assignment been asked; and at that time Smith, according to his own admission, had received $400 from complainant on account of an interest in the first patent. Under these circumstances and in view of Smith's previous claim that complainant was not entitled to any interest in the second patent or in the business, the offer or proposal cannot, in my judgment, be considered such a recognition of complainant's rights to a conveyance of all the patents and to a share in the profits then and afterwards to be made as to justify complainant's delay in asserting these rights. Upon the ground, therefore, of delay in applying for the specific performance of the contract, relief must be denied.

Subsequent to the filing of the answer the defendant conveyed

to a company in which he is a stockholder and officer the patents in question, and the deed of conveyance was offered in evidence at the hearing. Defendant claimed that the complainant's suit for specific performance thereby became ineffective and that no decree for specific performance could be made against Smith. But the assignment in this case expressly provided that it should not in anywise include the claims, rights and interest, if any, of the complainant in the patents, the sale being expressly subject to such claims, which, however, was not admitted. Smith's assignment does not convey complainant's interest, and the rule requiring purchasers *pendente lite* to be made parties where their conveyance of the legal estate is required, stated in the text-books (*1 Dan. Ch. Pr. 281; Story Eq. Pl.* § *351*), does not apply; and inasmuch as the bill also prays for the assignment or the establishment of an interest in the profits of the business and an accounting, the claim of complainant is one to be considered and determined on the case against defendant and without requiring the assignee *pendente lite* or defendant to be made a party.

*Mr. Frank E. Bradner*, for the appellant.

*Mr. Robert H. McCarter*, for the respondent.

·The opinion of the court was delivered by

Collins, J.

The complainant failed to establish the final contract alleged, or any contract at all as to improvements on the defendant's original invention or as to participation, as partner or otherwise, in defendant's profits. The only contract proved was with reference to the invention on which the defendant had applied for a patent on November 2d, 1887, and for which letters numbered 396,177 were issued January 15th, 1889. This contract was oral, and, according to the testimony of all concerned, must have been made near the beginning of the year 1888. Its effect was to give to the complainant a three-sixteenths interest in the in-

vention and in the expected patent, for a consideration of $750. The exact tenor of the contract is hard to gather from the testimony, but, in the light of a receipt afterwards given by defendant, I think that it was an absolute contract of purchase *in præsenti.* This receipt was given on December 6th, 1888, and reads as follows:

"NEWARK, N. J., December 6th, 1888.

"Received from Ellen McLane and William Harrigan, five hundred and twenty-five dollars, on account of fifteen hundred dollars, for three-eighths (⅜) interest in patent tapping apparatus.

"ANTHONY P. SMITH."

I think that this paper indicates that by the contract the purchasers became immediately entitled to their respective interests in the invention, conceded to have been several and not joint, and that the seller became immediately entitled to the purchase price.

An inchoate right in a patentable invention is a subject of lawful sale, and a sale of such a right carries with it a corresponding interest in the patent when letters are afterwards issued. *Clum* v. *Brewer, 2 Curt. C. C. 506;* approved, *Hendrie* v. *Sayles, 98 U. S. 546.* In *Clum* v. *Brewer* it was said by Mr. Justice Curtis that if the purchaser does not get the legal title, a *jus in re,* he certainly does get an equitable title, a *jus ad rem,* and can use or license others to use the invention, and can at any time demand a formal assignment of his interest in the patent. In the case that was then before the court, the written contract provided, in terms, for an assignment of the purchased interest, when the patent should issue; but even without such an agreement an obligation to assign is necessarily implied in a sale of an interest in such an invention.

It makes little difference whether we consider the contract between the parties to this cause as one *of* purchase, or as one *for* purchase, for the defendant admits an agreement to assign on payment of the purchase price. Specific performance of an oral contract to assign an interest in letters-patent when issued will be compelled. Such a contract is neither within the statute of frauds nor within section 4898 of the United States revised

statutes, requiring assignments of patents to be in writing. *Dalzell* v. *Duerber Manufacturing Co., 149 U. S. 315.*

The reasons given by the learned vice-chancellor for the denial of a decree for the specific performance of the contract claimed by the complainant are cogent, and, perhaps, convincing; but I can see no objection to a decree enforcing, on equitable terms, the contract admitted by defendant. Mere lapse of time will not defeat a claim of equitable ownership in a patent. In *Clum* v. *Brewer, ubi supra,* the original agreement was made in 1838, and Judge Curtis, in 1855, said that the purchaser then had the right to call for an assignment of even an *extension* of the patent, which he held was necessarily implied in the sale of an interest in the *invention.*

The defendant has always acknowledged the complainant's right to an assignment of a three-sixteenths interest in patent 396,177. In his answer, indeed, he alleged that the contract therefor had been rescinded, but he offered no proof of rescission. On the contrary, he testifies to his willingness, in 1891, to assign such an interest. The only dispute was that complainant demanded more. He adds: " I always intended to give him what he bought." He admits receiving $400 on account of the purchase price, and while it is true that the complainant made no tender and demand in conformity with the contract, it is also true that neither did the defendant. The defendant has always recognized the complainant's rights, and, in his answer to so much of the bill as sought to enjoin a contemplated sale, he averred that he intended to except those rights. In the sale that he has made, *pendente lite,* he has excepted those rights.

That the claim of the bill is too broad and the original contract not accurately stated should not work a dismissal. The real contract is sufficiently proved; there is a prayer for general relief and the court ought to make an end of the controversy. A decree should be made under which the complainant may be assured the legal title to a three-sixteenths interest in patent 396,177 as of the date of such decree, but no other relief should be accorded. If we were to go farther and require an account of past profits or royalties injustice would be done. Joint

Harrigan *v.* Smith.

owners of a patent are not partners. *Parkhurst* v. *Kinsman, 2 Halst. Ch. 600; S. C., 1 Blatchf. 488 ; Marsh* v. *Newark Heating, &c., Co., 28 Vr. 36.* Each owner, legal or equitable, in a patent may use it or license others to use it, or grant rights under it. The cases are unanimous to this extent. A tentative suggestion of Mr. Justice Hall, in *Pitts* v. *Hall, 3 Blatchf. 201,* that an assignment or a license by one co-owner should be considered as an infringement on the rights of the others and, at their option, be treated as a conversion actionable at law, met with no favor and has long ago been repudiated. Accountability for profits or royalties where there is no partnership or other agreement on the subject is, strange as it may seem, still a moot point on which there has been very little direct pertinent adjudication. The only real decision on the subject is *Vose* v. *Singer, 4 Allen 226,* in which case, in 1862, the question was treated as one of first impression. In a well-reasoned opinion, fortified by alleged concurrence with the views of those members of the legal profession who were specially versed in patent-rights, the Massachusetts supreme court denied the liability of a part owner of a patent to his co-owners for any portion of the profits arising from the sale of the patented articles. This deliverance has been followed both in England and in this country by *dicta* even more broadly asserting the doctrine of non-accountability. *Mathers* v. *Green, L. R. 1 Ch. App. 29 (1865); De Witt* v. *Elmira, &c., Co., 66 N. Y. 459 (1876); Burr* v. *De La Vergne, 102 N. Y. 415 (1886); Gates* v. *Fraser, 118 Ill. 99 (1886).*

In the New York case first cited, the court of first instance (*5 Hun 301*) drew a distinction between personal use by the part owner and a transfer of rights, which was approved in the Illinois case when first considered (*9 Bradw. 624*), but the court of last resort recognized no such distinction. On the other hand, Chancellor Halsted, in 1847, seems to have taken it for granted that co-owners of a patent must account to one another, even for individual manufacture and sale. *Parkhurst* v. *Kinsman, 2 Halst. Ch. 600.* Judge Drummond, in 1876, while conceding that the difficulties in the way were nearly insurmountable,

expressed his opinion that a licensor of patent-rights, who was only a part owner of the patent, ought to be made to account to his co-owners if he received more than his equitable share of profits (*Dunham* v. *Indianapolis, &c., Railroad Co., 7 Biss. 223*), and last but not least Mr. Justice Bradley, in 1887, in the United States circuit court for New Jersey, declared in favor of the strictest accountability to co-owners for every sort of dealing with a patent. *Aspinwall Manufacturing Co.* v. *Gill, 32 Fed. Rep. 697.* He said, however, that the matter was unsettled and his opinion purely speculative. Our own supreme court considers the subject an open one. *Marsh* v. *Newark Heating, &c., Co., ubi supra.*

It would be very unjust to permit the complainant, who, for years, during this unsettled state of the law, has stood idly by while the defendant, by his energy and industry, was building up a business, now to come in and even raise the question of a right to share in the success of that business in the past. He did not sow and he should not reap. It is enough that we do not suffer his laches to bar him from the aid of a court of equity to compel a formal assignment of his interest in the patent. He may stand upon his legal rights if he will, but if he seeks equitable aid he must accept it on equitable terms, and those are that an accounting be denied.

Because we reach this conclusion we will not inquire into another question raised in the case, and that is whether any of the defendant's profits have been derived from the patent in which complainant has his interest. The second patent was applied for December 29th, 1888, and issued January 21st, 1890. Defendant says, and seems to have proved, that it is for a substantially different invention from that of the first patent. While a mere change in construction of a machine or apparatus will not defeat a patent on the real invention involved (*Parkhurst* v. *Kinsman, 1 Blatchf. 488*), yet a substantial variation or improvement does not enure to an assignee (*Essex Button Co.* v. *Paul, 48 Fed. Rep. 310.*)

Apart from this, defendant attempts to prove, and has not been satisfactorily answered, that it was discovered that both

Harrigan *v.* Smith.

his patents infringed on an earlier one issued to James Curran, which he was therefore compelled to buy, and that it is under that patent that his business has been conducted. If these claims be well founded complainant's right will be a barren one, but we will not prejudge it. Such claims would only be available in this action to defeat an accounting, and to that end are unnecessary. Questions of validity of patents are more properly, if not exclusively, within the jurisdiction of the federal courts. They certainly cannot be drawn into a state court except collaterally, and there is no need for such collateral inquiry now. It is better that those suggested in this cause shall be directly tried and settled in the future conduct of business by these parties.

The decree appealed from should be reversed and a new decree be made, simply giving to the complainant the formal assignment to which we adjudge him to be entitled, on terms that he pay into court or to a master who shall supervise the execution of the instrument the sum of $350 without interest.

Inasmuch as the complainant never demanded such an assignment as he was entitled to receive, and never tendered payment of the purchase price therefor, except on a demand with which the defendant could not comply, and came into court with a broader claim than he could sustain, no costs in the court of chancery should be allowed him. If the complainant shall not, within a short time to be fixed by the court of chancery, comply with the terms above imposed the bill may be dismissed, with costs.

The appellant is to have costs in this court.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, VAN SYCKEL, DIXON, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH—14.

*For reversal*—None.