## CYRUS P. EMERY

### *v.*

## GEORGE MOHLER.

| 69 | 221 |
| 185 | 214 |
| 69 | 221 |
| 111a | 1616 |

1. PAROL EVIDENCE—*to explain or vary written contract.* It is a general rule of law, that where parties have deliberately put their engagements in writing, in such terms as import a legal obligation without any uncertainty as to the object or the extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing, and there is an end of parol evidence to show what the parties meant.

2. SAME—*to show a mistake.* Where a party in his bond bound himself to convey to another 280 acres of Wisconsin land, to be selected by the latter from a list of lands described in the bond itself, and made no reference to any other paper for their identification, it was *held*, that the obligor could not allege in his bill, to reform the bond for a mistake in the description of one of the tracts which had been selected, a parol contract, and prove by parol that the obligee was to select his land from those described in a registered certificate of purchase.

3. It follows, from the general rules of evidence, that a party who resorts to equity for the correction of a written instrument in a certain specified particular, can not introduce parol evidence of an original parol

contract, or terms or stipulations at variance with the other provisions of the written instrument, as to which no fraud, mistake or surprise is alleged.

4. MISTAKE—*must be clearly shown.* It is incumbent on a party seeking in equity to reform a written contract, on the ground of an alleged mistake, to show, by clear and satisfactory evidence, the fact of such mistake as to both parties—in other words, that the mistake was mutual. It is not sufficient to show a mis-description of land in the contract, occurring through the party's own negligence and mistake.

WRIT OF ERROR to the Circuit Court of Whiteside county; the Hon. W. W. HEATON, Judge, presiding.

Messrs. WOODRUFF BROS., for the plaintiff in error.

Messrs. SACKETT & BENNETT, for the defendant in error.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court :

This was a bill in equity, brought in the circuit court of Whiteside county, by Mohler against Emery, to enjoin the further prosecution of a suit at law, brought by the latter against the former, in the same court, for the alleged breach of a certain bond executed by Mohler to Emery, for the conveyance by the former of certain lands to the latter, and to correct said bond in respect to the description of a parcel of land therein contained.

The bond in question bore date March 1, 1871, was in the penal sum of $2000, and the condition, after reciting that Emery had conveyed, by warranty deed to Mohler, a certain parcel of land, describing it, which was situate in Whiteside county, aforesaid, and containing four $\frac{31}{160}$ acres of land, valued at $1000, provided that if Mohler should, whenever requested, execute and deliver to Emery a good and sufficient deed, conveying to him the amount of 280 acres of land situated in the State of Wisconsin, and selected by Emery within six months from date, out of the following described 1480 acres of land, free and clear of all incumbrances, etc., then the obligation to be void. This condition was followed by this :

"The following is a description of the above mentioned 1480 acres of land that said Emery is to select his 280 acres from, that George Mohler is to make to said Emery said deed : north-west quarter of section 4, township 26, range 5; number of acres, 160."

Then followed fifteen other parcels, as to which there is no question.

After the making and delivery of the bond, and within the time limited, Emery went to Wisconsin, found the lands described, and, in selecting the quantity he was to have, made choice of the north half of the above described quarter section. He thereupon notified Mohler of his selection, and demanded a deed in pursuance of the bond. Mohler refused to give such deed of the said north half, on the ground that he had no title to it. By arrangement, however, Emery, without waiving his claim to that portion, accepted a deed of the other portions selected, and brought an action at law upon the bond, to recover damages for a breach thereof, whereupon Mohler filed the bill in this case to restrain the prosecution of that suit, and to have the description in the bond, as to the above mentioned quarter section, corrected, and the bond reformed, so as to make such description read : the "south half" of section 4, town. 26, etc., on the ground that the words "south half" were omitted by mistake, and the description, as it was, was contrary to the intention of both parties in making their contract for exchange of lands.

To this bill Emery filed an answer, denying the mistake, and that the intention was otherwise than as expressed in the bond, and filed a cross-bill for specific performance of the contract, as made, to which Mohler filed his answer. Issues having been formed by replications, the causes were heard upon the pleadings and proofs, and a decree passed dismissing the cross-bill and granting relief upon the original bill, by perpetually enjoining the further prosecution of said action at law, and decreeing a correction of the bond, as prayed.

To this decree Emery prosecutes a writ of error from this court.

The bill alleges the entry, previous to March 1, 1871, at the United States land office, in Wisconsin, by Mohler, of a large number of tracts of government lands, which are described, and for which he received the register's certificates; that about the date just mentioned, he and Emery entered into a contract for an exchange of lands, by the terms of which Emery was to convey to complainant certain lands lying in the county of Whiteside, and the latter to convey to defendant 280 acres of the lands, and to be selected therefrom by defendant after he should have an opportunity to examine the same; that complainant, at the time of making the contract, produced said certificates to defendant, as containing the description of his lands, from which said 280 acres so to be exchanged by complainant, were to be selected by the defendant, and no other list or memorandum of the same was produced at the time of the contract, and no other but said certificates were spoken of between the parties, as owned by complainant or as proposed to be exchanged by him. "And it was distinctly understood and agreed, at the time of making such contract by and between the parties thereto, that the 280 acres so to be selected by said defendant were to be selected from the lands included and described in said register's certificates, so produced and shown by your orator, as aforesaid, and no others, and which are the same hereinbefore more particularly described; that, *as a part of the same* agreement, it was further agreed between the parties, that said Emery should, forthwith, deed to your orator the land so to be exchanged and deeded by said Emery, and that your orator should execute to the said defendant a bond, conditioned for the conveyance to said Emery of 280 acres, *to be selected by him from the lands embraced in said certificates,* at some future day, after giving said Emery a reasonable time for making an examination of said lands and a selection of 280 acres."

It is thus the bill sets out the original contract, which was by parol. It then alleges the mistake in describing the whole of said north-west quarter of section 4, when, by the certificates, it should have been the south half of said quarter.

We have critically examined Emery's answer to this bill, to ascertain if he admitted the original contract, as set out in the bill, and are satisfied the answer does not so admit it. The contract admitted by the answer varies in a manner essentially affecting the contract. *Harris* v. *Knickerbocker*, 5 Wend. 638; Willard's Eq. Jur. 283.

The answer denies a material circumstance, viz : that, at the time of entering into the contract, Mohler produced the certificates referred to in the bill, but avers that, instead, he made out a list of the lands he claimed to own, from which the 280 acres were to be selected by Emery, and requested the latter to draw the bond from such list, and that such list contained the description of said north-west quarter as it is in the bond. It also avers that the bond, being drawn, was then submitted by Emery to Mohler and his attorney for examination, who, after carefully examining it, made several corrections as to descriptions of lands before execution. So much for the case as it stands upon the pleadings, with this further observation : that there is no pretense in the bill of any other mistake in framing the bond, except the alleged omission of the words "south half," as respects the description of said quarter section.

It appears, by the evidence, that the bond was drawn by Emery ; but he insists in his answer, and so testifies, that instead of making up the descriptions of the Wisconsin lands, from which he was to select his 280 acres, from the register's certificates held by Mohler, the latter gave him a list of the parcels he claimed to own, and from that list, which contained the quarter section described as it is in the bond, he, Emery, drew the bond. Mohler, in his evidence, admits that he called off the descriptions from his certificates, to Emery, and the latter took them down ; but he claims, in addition

15—69TH ILL.

to that circumstance, that Emery afterwards took the certificates into his possession, from which he made another list before drawing the bond. Mohler does not profess to have a clear recollection of what took place, and this latter fact is expressly denied by Emery, who says he drew the bond putting in the description of the land as Mohler gave it to him. And when the language of the bond is considered, there is no preponderance of evidence against Emery on that point.

Mohler's theory is, that the very lands described in the register's certificates, and none other, were the basis of the original contract. And he goes further in his bill, and alleges that it was a part of that contract that Emery should forthwith deed to him the land to be so exchanged and deeded by Emery to him, and that he, Mohler, should execute to Emery a bond, conditioned for the conveyance to Emery of 280 acres, to be selected by him from the lands *embraced in said certificates.* Now, there is not a word in the bond about the lands being to be selected by Emery from the lands embraced in any certificates, nor is any mistake in the bond alleged as to that. Mohler, in his testimony, does not pretend to state any such terms to the parol contract, and it would be incompetent evidence if he had.

It is a general rule of law, that when parties have deliberately put their engagements in writing, in such terms as import a legal obligation, without any uncertainty as to the object or the extent of such engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking was reduced to writing. *Merchants Ins. Co.* v. *Morrison,* 62 Ill. 242.

In *Davis* v. *Symonds,* 1 Cox, 402, Lord Chief Baron EYRE said : "The foundation of the rule in which parol evidence has been holden inadmissible, is in the general rules of evidence, in which writing stands higher in the scale than parol testimony; and when treaties are reduced into writing, such writing is taken to express the ultimate sense of the parties, and is to speak for itself. Indeed, nothing is so familiar as

this idea. At *Nisi Prius,* when an agreement is spoken of, the first question always asked is. whether the agreement is in writing. If so, there is an end of all parol evidence ; for when parties express their meaning with solemnity, this is very proper to be taken as their final sense of the agreement. In the case of a contract respecting land, this general idea receives weight from the circumstance that you can not contract at all on that subject, but in writing ; and this, therefore, is a further reason for rejecting parol evidence. In this way, only, is the Statute of Frauds material, for the foundation and bottom .of the objection is in the general rules of evidence. I take this rule to apply in every case where the question is, what is the agreement?"

In the present case, the pleader, in drawing the bill, felt the necessity of laying such a foundation for the correction of the alleged mistake in description of the parcel in question. But it is clear that such a stipulation would be totally at variance with the language and plain import of the bond, which provides that the selection of 280 acres by Emery is to be made from the lands described in the bond, and makes no reference to such as are embraced in register's certificates held by him.

It must follow, from the general rules of evidence above adverted to, that a party who resorts to equity for the correction of a written instrument, in a certain specified particular, can not introduce parol evidence of an original parol contract, or terms or stipulations at variance with the other provisions of the written instrument, as to which no fraud, mistake or surprise is alleged. See 1 Sug. on Vend. and P. 161. From this doctrine flows the legal conclusion, that, inasmuch as the bond makes no mention of the register's certificates as embracing the lands from which Emery's 280 acres were to be selected, and there is no basis in the bill or by the evidence for attributing the omission to fraud, mistake or surprise, it must, therefore, be conclusively presumed there was no such stipulation or understanding between the parties.

In this view, the evidence wholly fails to establish a case for the correction of the bond in the particular sought, because it was incumbent upon the complainant to show, by clear and satisfactory evidence, that the description as it was, and which is alleged to be erroneous, was the result of mistake in both parties—in other words, that the mistake was mutual.

As regards a mistake on Emery's part, the evidence is far from satisfactory. He owned this four $\frac{31}{160}$ acres, near the town of Morrison, in Whiteside county, of the value, as stipulated in the bond, of $1000. He did not seek Mohler to exchange this for the wild lands of the latter in Wisconsin, but the latter sought him and urged the exchange, representing, and, as it appears, falsely, that his were good pine lands, but of which Emery had no knowledge until he went to make the selection. Mohler gave Emery a list of the lands he claimed to own, from which the 280 acres were to be selected, and requested him to draw the bond. Emery testifies that he drew the bond in accordance with the description so given. Mohler does not undertake to testify, that when he gave off the descriptions to Emery he gave the parcel in question otherwise than it is in the bond.

But this is not all. It is a fact, not disputed, that when the bond was drawn, it was, by previous arrangement, taken by Emery to the office of Mohler's attorney, in order that it might be examined by Mohler and his attorney before execution. It received such an examination by them, that it was corrected in several particulars, as to description. The register's certificates were there, and every reasonable opportunity given to secure accuracy. After it had passed this scrutiny, it was executed, and on the faith of it Emery delivered over the deed to his land near Morrison, valued as we have stated. Acting further upon the faith of it, he went to Wisconsin and selected his 280 acres in accordance with its terms. It now turns out, that the north half selected by him from the quarter section in question, is the only parcel of any appreciable value of all the parcels described in the bond. Notwithstand-

.ing these circumstances, Mohler seeks to take advantage of his own mere *laches*, or mistake, and by this proceeding for the correction of the bond deprive Emery of both the land and all remedy upon the bond for damages. His mistake may constitute a defense to Emery's cross-bill for specific performance, but can afford no ground for the correction of the bond.

The decree of the court below must be reversed, and the bill dismissed.

*Decree reversed.*