DAVID R. FRASER

v.

PHILETUS W. GATES.

*Filed at Springfield March 30, 1885—Rehearing denied June Term, 1886.*

1. INVENTION—*who to be regarded as the inventor.* Where one party invents a new principle in machinery, as, to make a hard iron shoe with a soft iron stem, for stamping and pulverizing ores, and for which he applies for letters patent, and another suggests the plan of first pouring in the hard iron and then the soft iron, to fill up the place for the stem, which, on experiment by the inventor of the principle, proves successful, the fact of such suggestion being made to the first party will not defeat his claim as the inventor, especially when the other acquiesces in the claim, and accepts letters patent to both under an assignment of a half interest.

2. The fact that one claiming to be the inventor of an improvement in machinery, assigns one-half interest to another, who is a manufacturer, and with whom he has an agreement that each is to share equally in any invention of either one, does not afford evidence that the assignor was not in reality the inventor.

3. JOINT PATENTEES *of an invention—liability to account.* One of several joint patentees of an invention is not liable to account to the others for profits derived from the use of the patent, in the absence of a special agreement providing for such accounting.

4. SAME—*character of relation between several owners—agreement to account, as a continuing one.* Where an inventor, before receiving letters patent, transfers to another a half interest, under a contract that the patent shall issue to both, and each shall account to the other for all royalties received by them on sales, etc., they will not become partners in the letters, but tenants in common, with the right to require each other to account for one-half of the profits derived by them, severally, for the use of the patent, and the agreement to account and pay over is a continuing consideration for the grant of the letters patent.

5. SAME—*bankruptcy of one of the tenants in common — and subsequently acquiring back his interest from the assignee.* Where a tenancy in common in letters patent exists, with a continuing obligation of each to account to the other for all profits derived by them, and one is adjudged a bankrupt, but afterward receives the assignee's deed for his interest, he may, notwithstanding the adjudication in bankruptcy, enforce an accounting from his co-tenant.

6. SAME—*Statute of Frauds—as applicable to an agreement to share the profits, etc.* Where an inventor of a new principle in mechanics assigns one-half interest in the invention to another, in consideration of an agreement that each shall share equally in the cost of procuring a patent to them jointly, and in the profits and expenses and losses, and the patent is issued to both, and for some time they account to each other, the Statute of Frauds will not be applied to defeat the enforcement of the agreement, for the reasons that the contract has been fully executed on one side, and might have been performed within one year, though not so expected.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Philetus W. Gates exhibited his bill in chancery, in the circuit court of Cook county, against David R. Fraser and Thomas Chalmers, in which, among other things, it is, in substance, alleged that Gates invented a new and useful improved shoe for stamping or pulverizing ores, for which he made application for letters patent; that before the patent was issued, Gates assigned all his right, title and interest in the invention to himself and David R. Fraser, in consideration that Fraser then verbally agreed with him that each should pay one-half the expense to be incurred in procuring the patent, and that they would be equal partners in all

losses and expenses relating to the patent, and in the gains and profits thereof, and in all royalties or patent fees to be derived therefrom; that letters patent for such invention were thereupon issued to said Gates and said Fraser, jointly; that soon after obtaining said letters patent, they, by mutual agreement, adopted and fixed as the royalty or patent fee to be paid by persons who might sell or furnish for use said patent shoes, one cent per pound weight thereof, which was then, and still is, a reasonable patent fee therefor, and they collected and divided, between themselves, equally, as co-partners, from the date of the issuing of said letters patent until the 1st day of January, 1878, patent fees or royalties on sales of said patent shoes by other persons, at the rate of one cent per pound weight thereof, amounting to from $300 to $1000 'or $1200 per year, except during a few months they charged and collected a royalty of only one-half cent per pound on sales, by reason of the competition of others in supplying to the trade, mining machinery of a similar kind. But such competition ceased on or about the 1st day of January, in the year 1878, and thereafter a reasonable and proper patent fee, for making and selling to others said improved shoe, was, and has been, one cent per pound weight thereof. It is alleged, that since May 14, 1879, Fraser and Thomas Chalmers have been doing business as machinists and manufacturers of mining machinery, in the city of Chicago, under the firm name of Fraser & Chalmers, and have manufactured and sold large quantities of said patent shoes, upon which Gates claims that he is entitled to royalty; that Fraser & Chalmers refuse to account for royalty on such shoes; that Gates is willing to account for royalty on sales made by him since said date, etc. Prayer is that Fraser & Chalmers be required to account for royalty on sales made by them, and to pay over, etc.

The answer of Fraser admits that letters patent were issued to Gates and himself, as co-owners, as alleged in the

bill, but denies that Fraser, at any time, entered into an agreement with Gates in regard to the ownership or use of said letters patent; but he says that, being ignorant of his rights in the premises, he, for a long time, supposed that he was under legal obligation to account to Gates, because he and Gates were co-owners of said patent, and that he did account and pay over to Gates half the profits received by him from the use of the patent, down to January, 1878; that on the 22d of May, 1878, Gates filed a petition in bankruptcy, and was thereupon adjudged a bankrupt, and he insists that by the petition in bankruptcy of Gates, any relation of co-partnership between him and defendant, if any there was, became thereby terminated and dissolved. It is therein further alleged, that Fraser, becoming better advised in regard to his rights as co-owner of the patent, after the 1st of January, 1878, refused to account to Gates for one-half of the profits or royalties arising from said patent; that about the 14th of May, 1879, said letters patent were sold by Gates' assignee in bankruptcy, and purchased by Gates, to whom the assignee made conveyance; but Fraser denies that this revived any rights of Gates as co-partner with himself in the patent; denies that Fraser, as co-patentee, is, or ever has been, under any legal obligation to account to Gates for any part of the profits, royalties or license fees received by him for the use of the said patent, and denies that he is under any liability to account. The answer admits that since the 14th of May, 1879, and previous thereto, Fraser licensed the firm of Fraser & Chalmers to use said letters patent, upon their paying him a license fee of half a cent a pound upon all articles manufactured under the same. Chalmers also answered, denying any liability to account.

Subsequently, Fraser filed an amended answer, denying that Gates was the sole inventor of said shoe for stamping ores, and claiming that Fraser was equally entitled with Gates to the patent issued for the same; denying that Gates

assigned him a one-half interest in said letters patent because of good will, or friendly feeling, or upon the condition that Fraser would divide any of the royalties coming from the same, with Gates; but charges that said letters patent were issued to Gates & Fraser, jointly, because of their joint rights and interests, etc. Replication was filed to the answer.

The court decreed in favor of the complainant. The decree finds the allegations of the bill to be proved, setting forth, specifically, the facts, and refers the cause to a master in chancery, to "take proof, and state an account since the 14th day of May, 1879, between complainant, and defendant, Fraser, in respect to said patent." The master afterwards reported, in substance, as follows:

"After fully considering the evidence and arguments of counsel, finds that the complainant, since May 14, 1879, has licensed, under the patent mentioned in the decree, the firm of P. W. Gates' Sons & Co., and the Gates & Scoville Iron Works, to manufacture, and that few sales have been made by them, owing to Fraser & Chalmers having practical control of the mining machinery business; that complainant had not collected royalties of said firm and corporation licensed by him, as he had an interest in both, and had not settled his account with them, but he consents that he be charged the royalty on shoes sold, at one cent per pound, which are all shoes sold under his license since May 14, 1879. That during said time the firm of Fraser & Chalmers did a large business in mining machinery, and all shoes made under the Fraser license were sold by said firm. At said last mentioned date, the defendant, Fraser, for the purpose of avoiding any accounting with the complainant for any royalties or license fees with which he might become chargeable if said firm of Fraser & Chalmers continued to have said shoes manufactured, made an arrangement with said Barnum & Richardson Manufacturing Company, by which he, said David R. Fraser, employed said Barnum & Richardson Manufacturing

Company to manufacture said shoes for him, said Fraser, and from March 1, 1881, to September, 1882, all shoes sold by said Fraser & Chalmers were manufactured by said Barnum & Richardson Manufacturing Company, and charged to said Fraser individually, but his account was paid by the firm of Fraser & Chalmers by their checks, and said Fraser was paid or credited on the books of Fraser & Chalmers, with a one-half or one-fourth cent per pound on said shoes, in pursuance of some sort of indefinite understanding between said Fraser and said firm of Fraser & Chalmers. From September, 1882, to date of accounting before me, Fraser & Chalmers manufactured in their own foundry, under Fraser's license, the shoes, except those under date of June, 1882."

From said findings, and evidence attached to report, the master states the following account under the first direction in the decree, to-wit:

Charges Fraser with patent fees or royalties received by him on 950,244 pounds of shoes at one-half cent, and 722,381 pounds at one-fourth cent. - - - - - - - $6557 17
Charges complainant, Gates, with patent fees or royalties on 17,521 pounds of shoes at one cent. 175 21

Excess of Fraser's over Gates' royalties. - - $6381 96
December 15, 1883, due Gates from Fraser, one-half of said excess. - - - - - 3190 98

"I have charged the defendant, Fraser, with the amount allowed to him by his said firm upon the shoes manufactured by him, through the Barnum & Richardson Manufacturing Company, from March 1, 1881, to September, 1882, because it appears from said evidence that the change made by said Fraser, by which he caused said shoes to be charged to him upon the books of the Barnum & Richardson Manufacturing Company, instead of to said firm, was done in order to avoid an accounting with the complainant for patent fees or royalties."

From said findings and evidence the master states the following account under the second direction of the decree, viz: "Total shoes manufactured for Fraser & Chalmers by Barnum & Richardson under Fraser's license, and sold by Fraser & Chalmers, between May 14, 1879, and March 1, 1881, 713,825 pounds; total shoes manufactured for Fraser by Barnum & Richardson, and sold to Fraser & Chalmers by Fraser, 758,-825 pounds; total shoes manufactured and sold by Fraser & Chalmers under license of Fraser, 199,978 pounds; total shoes manufactured and sold by P. W. Gates' Sons & Co., and the Gates & Scoville Iron Works, under license of Gates, 17,521 pounds.

"The defendant, Fraser, and the witness W. J. Chalmers, who seems, from his evidence, manner and appearance, to be a shrewd, well-informed and careful business man, both say that the firm of Fraser & Chalmers was satisfied with a profit of one-half cent per pound, and while the profit on the sales made by Fraser & Chalmers at $4.20 per hundred pounds, where Fraser has been allowed only one-fourth cent royalty, would amount to but forty-five cents per one hundred pounds,—if he were allowed one-half cent royalty,—still, when all the sales of Fraser & Chalmers in any one year are taken into consideration, their average net profit would be more than one-half cent per pound, after paying to Fraser a royalty of one-half cent per pound.

"The cost of manufacturing said patent shoes during the period in controversy, as appears from said evidence, is as follows: From May 14, 1879, to October 26, 1879, two and one-half cents per pound; from October 25, 1879, to January 21, 1880, three cents per pound; from January 21, 1880, to February 13, 1880, three and one-half cents per pound; from February 13, 1880, to June 29, 1880, three and one-quarter cents per pound; from June 29, 1880, to July 24, 1880, three and one-half cents per pound; from July 24, 1880, to September, 1882, three and one-quarter cents per pound.

"From September, 1882, said shoes were manufactured by the firm of Fraser & Chalmers in their own foundry, but it does not appear during that period what was the cost of manufacturing said shoes. The prices obtained by the firm of Fraser & Chalmers in the sale of said shoes are shown, as are also royalties paid Mr. Fraser during that period, and from such cash prices at the different periods embraced in this accounting, and the prices obtained for shoes from time to time, I have made computations, on which are based the above conclusions. It also appears from said evidence, that a profit of ten per cent on this character of manufacture and sale of machinery is a good profit, and that the average profit of Fraser & Chalmers, after allowing said Fraser one-half cent royalty on all their sales, would be more than fifteen per cent on their investment. Another thing to be taken into consideration is, that the defendant, Fraser, has all along been a member of the firm of Fraser & Chalmers, having from one-half to a third interest in said firm; and it is not to be expected that Mr. Fraser would exercise that business sagacity and strictness with his own firm that he would have taken with strangers.

"Although I do not consider that it comes properly under the directions of said decree, at the request of the complainant's solicitor I have made a computation of what the defendant, Fraser, might and ought to have received, by the exercise of good business prudence and sagacity, as royalty or patent fees upon shoes manufactured by him, as hereinbefore shown, as follows: Total number of pounds of shoes from which the defendant, Fraser, received royalty after May 14, 1879, as shown by said evidence and exhibits, 1,672,625; amount of royalty on above, at one-half cent per pound, $8363.12; less royalty received by complainant, $175.21; excess of Fraser's over Gates' royalties, $8187.91. The complainant, Gates, by the foregoing conclusions, under the third direction in said decree, should receive one-half of this excess, to-wit, $4093.95."

Fraser, by his solicitors, filed the following exceptions to the master's report:

"*First*—Defendant excepts to so much of said report as finds any sum due from said defendant to said complainant.

"*Second*—Said defendant excepts to so much of said report as charges him with royalty or license fees upon shoes manufactured by Barnum & Richardson for said defendant during the months of March to September, inclusive, A. D. 1882, namely, the sum of $2429.92, for the reason that the proof shows that said defendant did not receive any royalty or license fee for the same, but made only a direct profit as manufacturer.

"*Third*—Said defendant excepts to so much of said report as finds he could have received a royalty of one-half cent per pound upon all shoes made by the firm of Fraser & Chalmers, under his license, for the reason that the evidence does not support said finding, and also for the reason that said finding is inconclusive, irrelevant, and not called for by the decree herein.

"*Fourth*—Said defendant excepts to all the statements and reports of facts contained in said report, for the reason that they are irrelevant, incomplete, and not warranted by the evidence or called for by the decree, and he asks that the following facts, as shown by the evidence, may be also reported, if any facts are so reported by the master, viz: that the uniform cost of the manufacture of the shoes during the period in controversy was three and three-quarters cents per pound; that in all cases, with one or two possible exceptions, where defendant only received one-fourth of a cent per pound royalty, Fraser & Chalmers only got $4.20 per pound for the shoes; that after deducting said royalty of one-fourth cent, the net manufacturer's profit to Fraser & Chalmers was $\frac{20}{100}$ or one-fifth of a cent, which was at the rate of a trifle less than five per cent; that complainant testified, that under some circumstances twenty per cent was not an unusual manufac-

turer's profit. It appears that the shoes licensed to be sold by complainant from May, 1879, to date, realized a manufacturer's profit to the Gates & Scoville Iron Works Company, of which complainant was chief owner, of one and one-half cents to two cents per pound.

"*Fifth*—Said defendant excepts to so much of said report as finds and makes any computation of any amount of royalty received, or that is claimed to have been received by him, above the amount which the evidence shows was received by him, for the reason that the same is not in accordance with the facts, and is uncalled for by the decree, and irrelevant, and if such report means to find that said defendant should so be held for the same, he excepts to said finding for the same reason."

Final decree sustaining the third and fifth exceptions of the defendant to the master's report, and overruling other exceptions. Said report approved and confirmed except as to such portions of the same as relate to any finding or accounting by which there would be due to complainant more than the sum of $3190.98, and disregards and overrules that portion of said report which finds or makes an accounting of or relates to any further sum due complainant; finds there is due from the defendant, Fraser, to complainant, the sum of $3190.98, and directs payment of the same within ninety days; bill dismissed as to defendant Chalmers. Fraser appealed to the Appellate Court for the First District, and that court, on hearing, affirmed the decree of the circuit court. This appeal is prosecuted to reverse the determination of the Appellate Court. Errors were assigned presenting the questions discussed in the opinion.

Messrs. ISHAM, LINCOLN, BURRY & RYERSON, for the appellant:

If there was any partnership, it terminated when Gates became a bankrupt. Story on Partnership, 494, 495; Parsons on Partnership, 486-489; *Fox* v. *Hanburg*, Cowp. 445; *Marquand* v. *Manufacturing Co.* 17 Johns. 525.

The alleged parol agreement falls within the Statute of Frauds. *Packet Co.* v. *Sickles*, 5 Wall. 580; *Strehl* v. *Evers*, 66 Ill. 395; *Comstock* v. *Ward*, 22 id. 248; *Harris* v. *Porter*, 2 Harr. 27; *Boydell* v. *Drummond*, 11 East, 142; Browne on Statute of Frauds, secs. 272-297.

Part performance only affects the part performed. *Swanzy* v. *Morse*, 22 Ill. 63; *Thomas* v. *Dickerson*, 14 Bush, 90; *Pence* v. *Pence*, 28 Vt. 34; *Lane* v. *Schackford*, 5 N. H. 130.

Joint owners of letters patent are under no liability to account to one another, or to divide with each other the profits arising from any use of their respective interests in the patent, unless they have expressly and legally agreed so to do. *Vose* v. *Singer*, 86 Mass. (4 Allen,) 226; *DeWitt* v. *Manufacturing Co.* 12 N. Y. (5 Hun,) 302; *Clum* v. *Brewer*, 2 Curtis, 506; Curtis' Law of Patents, 186-191; Bump's Law of Patents, 141; *Finn* v. *Freeman*, 136 Mass. 260.

Mr. JOHN W. ELA, for the appellee:

Appellant having received a half interest in the patent, should be compelled to account to appellee for such license fees or royalties, according to the agreement. Such a contract is not within the Statute of Frauds. *Fraser* v. *Gates*, 9 Bradw. 624; Browne on the Statute of Frauds, sec. 279; *Fenton* v. *Emblers*, 3 Burr. 1278; *Moore* v. *Fox*, 10 Johns. 243; *Lockwood* v. *Barnes*, 3 Hill, 128; *McLees* v. *Hale*, 10 Wend. 426; *Blake* v. *Cole*, 22 Pick. 97; *Kent* v. *Kent*, 18 id. 569.

Bankruptcy of one part owner of a patent, who has transferred a half interest in the patent to the other part owner, under such contract and such conditions and circumstances as exist here, does not absolve said other part owner from the performance of his part of such contract while he continues to retain his said half of the patent. Such contract passes to the assignee with the interest in the patent and other assets; and such part owner must account to the assignee of

the assignee in bankruptcy (the appellee in this case) for the license fees received by him under the patent since the assignment. *Fraser* v. *Gates,* 9 Bradw. 624; Bump on Bankruptcy, (10th ed.) 693, and cases there cited.

One half owner of a patent is liable in equity to account to the other half owner for half of the license fees or royalties received by him for licenses issued under the patent, whether there was any special agreement between the parties or not. And the appellee is entitled to the relief sought in this case, even without regard to the special agreement. 1 Story's Eq. Jur. secs. 466, 566; *Pitts* v. *Hall,* 3 Blatchf. 201; *DeWitt* v. *Manufacturing Co.* 66 N. Y. 459; *Dunham* v. *Railroad Co.* 7 Biss. 223; *Parkhurst* v. *Kinsman,* 6 N. J. Eq. 608.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

Although the question is not free from doubt, we think the weight of authority is, that in case of joint patentees, neither is liable to account to the other for profits derived from the use of the patent, in the absence of a special agreement providing for such accounting. *Washburn & Moen Manufacturing Co.* v. *Chicago Galvanized Wire Fence Co.* 109 Ill. 71; *Vose* v. *Singer Manufacturing Co.* 4 Allen, 226; *Dewitt* v. *Elmira Manufacturing Co.* 12 N. Y. (5 Hun,) 303; Curtis' Law of Patents, (4th ed.) secs. 186-191; Bump's Law of Patents, 141. But the preponderance of evidence here, in our opinion, establishes an agreement, whereby it was mutually agreed between Gates and Fraser, that in consideration of the assignment of the invention by Gates to them, jointly, they would each bear one-half the expenses of obtaining the patent, and after the patent should be issued, that they would mutually account, each to the other, for one-half of the profits derived from its use. Gates testifies to this effect, and he is corroborated by the direct testimony of Fargo,

and by the conduct and action of both himself and Fraser. Fraser's denial is not sufficient to overcome this evidence.

The claim made by Fraser, that Gates was not the inventor, is not sustained by the evidence. The letters patent contradict the claim. Gates' evidence contradicts it, and he is sustained by the corroborating statements of others. Fraser's claim to be the inventor consists of a single remark,—which he says he made to Gates, but which Gates denies,—in the nature of a suggestion. It is said in Curtis on Patents, (3d ed.) 121, "that a person may be the real author of the plan of a complicated machine, or other invention which requires for its perfection the skill, and, to some extent, the inventive faculties, of workmen or engineers, in adapting the best means to the successful application of the principle.". The principle here was to make a hard iron shoe with a soft iron stem. There is no pretence but that, as to that principle, Gates was the inventor. But difficulty was experienced in making the two metals to mix. Fraser says he suggested, "Why not pour in the hard iron, and then pour in the soft iron, and fill up the place," and that ultimately this was done by Gates, and proved successful. The remark, when made, was not based upon actual knowledge, and was evidently intended as suggestive, merely, and until Gates, by repeated experiments, demonstrated that it was practical, Fraser did not *know* whether it was of value or not. But, at best, it related merely to the mechanical detail by which the principle previously conceived was to be made available. This will be illustrated by reference to *Bloxam* v. *Elsee*, 1 Carr. & Payne, 567, and *O'Reilly* v. *Morse*, 15 Howard, 62. Fraser acquiesced in this claim of Gates, permitted him to apply for a patent, as inventor, and accepted letters patent to Gates and himself, jointly, reciting that Gates was inventor.

Counsel contend it is absurd, if Gates were inventor, that he should assign one-half interest to Fraser. There is nothing, to our apprehension, absurd, or even unusual, in what

Gates says was the arrangement between them. They were brothers-in-law, mutually interested in manufacturing mining machinery, etc., and each somewhat given to experimenting in inventions in the machinery they were manufacturing. Each was to have one-half interest in the inventions of the other. Any advantage which Fraser derived from this patent· might therefore be fully offset by advantages which Gates would derive from other inventions of Fraser. But the sharing in the expense of obtaining the patent, and the advantage of having a manufacturer to aid in introducing the patent to the public, under favorable circumstances might, alone, very reasonably afford a consideration for the assignment of one-half of the patent.

But, conceding an agreement proved, two objections are urged against its enforcement in this action: First, that it was not in writing, and is therefore insusceptible of being enforced, by reason of the Statute of Frauds; and second, that, at most, it was but an agreement of co-partnership, which terminated upon Gates becoming bankrupt.

We think the case is not affected by the Statute of Frauds, in two views authorized by the evidence: First, the contract, on one side, has been fully executed. The letters patent were issued in pursuance of the agreement, and the obligation to account for the profits results from the use of those letters, by virtue of the agreement, and ceases with the use. (*White v. Murtland*, 71 Ill. 251; Browne on Statute of Frauds, sec. 117.) Second, although the agreement was not expected to be performed within a year, yet, by reason of peculiar circumstances, it might have been performed within the year. Browne on Statute of Frauds, secs. 275, 276, *et seq.*

It is quite plain, the agreement was not an agreement of co-partnership, because neither has an interest in the use of the patent by the other. They are simply tenants in common, with the right to require each other to account for one-half the profits derived by them severally from the use of the

patent.   The agreement to account and pay over is a continuing consideration of the grant of the letters patent.   Chitty on Contracts, (11th Am. ed.) 73. . Being continuing, it was unaffected by the bankruptcy of Gates,—Bump on Bankruptcy, (10th ed.) 493,—and the right to enforce it hence passed, upon the assignment in bankruptcy, to the assignee, and by the assignee's deed back to Gates.   Fraser's relations to the letters patent have remained all the time unaffected, and his obligations in respect thereof must, consequently, also remain unaffected.   The reasoning of the Appellate Court, in *Gates* v. *Fraser*, 9 Bradw. 631, meets with our concurrence, so far as relates to this part of the case.

The rulings of the circuit court upon the exceptions to the master's report we think correct, and we deem it unnecessary to review the evidence bearing upon the subject.

We find no sufficient ground in the record to warrant us in disturbing the decree below.   It is therefore affirmed.

*Decree affirmed.*