**·J. C. Osgood v. John Skinner, et al., for the use, etc.**

Gen. No. 10,873.

1.  OPTION CONTRACT—*what not an.*  A contract by which one party takes certain stock merely as a temporary mode of payment for a part of the property transferred by him to another, with the privilege of determining thereafter whether he will retain such stock as payment or require payment in cash, is not an option contract.

2.  NOTICE TO PERFORM—*how construed.*  A notice is to be read ac-

Osgood v. Skinner.

cording to the obvious intention of the parties, in spite of clerical errors
or omissions which can be corrected by a perusal thereof.

3.  NOTICE TO PERFORM—*when not essential.*   Where a person has re-
fused to perform, a notice requesting performance is not essential.

4.  TENDER—*when, not essential.   Held,* under the particular lan-
guage of the contract involved in this cause, that an actual tender there-
under was not essential.

5.  TENDER—*when excused.*   A tender under a contract is excused
where the opposite party thereto has repudiated such contract, and this
notwithstanding the fact of repudiation was not, at the time when the
tender should have been made, known to the party who otherwise should
have made it.

6.  TENDER—*when excuse for tender may be availed of on appeal*
Where the declaration does not aver that the tender was excused by the
conduct of the defendant, yet the plaintiff is entitled to the benefit of
evidence tending to show that he was excused, where no objection of
any kind was made to such evidence in the trial court.

7.  MISJOINDER—*when question of. may be raised.*   The question of
misjoinder cannot be first raised on appeal.

8.  MORAL OBLIGATION—*when question as to whether certain language
creates only a, should be submitted to the jury.*   The mere fact that the
phrase "word of honor" was used in entering into an agreement, does
not necessarily show that the obligation assumed was moral, and where
the evidence leaves the question doubtful, it should be left to the jury
to determine what was intended, whether a legal or moral obligation.

9.  PAROL EVIDENCE—*when, does not vary terms of written instru-
ment.*   Where it appears upon the face of a written instrument, or
from the surrounding circumstances, that it did not purport and was
not intended to represent all of the engagements of the parties, parol
evidence of a supplementary contemporaneous agreement is competent.
(So held by way of inference.)

10.  PAROL EVIDENCE—*when, incompetent as varying the terms of a
written instrument.*   Where the parties deliberately and solemnly put
their engagements into a sealed instrument without any uncertainty as
to their object or intent, it must be conclusively presumed that all an-
tecedent or contemporaneous propositions and offers not embraced in
its terms, were rejected as forming no part thereof, and parol evidence
to show any contemporaneous agreement relating to the subject-matter
of such contract, is incompetent.

11.  STATUTE OF FRAUDS—*when verbal agreement to run longer than
one year does not come within the.*   Where a verbal agreement is to re-
main in force for a longer period than one year, but may by some con-
tingency, such as death, be fully performed within one year from its
date, it is not within the Statute of Frauds.

12.  EXECUTORY SALE—*where title lies upon an.*   The title to stock
which is the subject of an executory sale, remains in the vendor until
the sale becomes executed.

13. MEASURE OF DAMAGES—*in case of refusal of vendee to carry out executory sale.* Where a party refuses to purchase stock pursuant to his agreement, the vendor is entitled to recover not the excess, if any, of the contract price over the market value, but is entitled to recover such contract price.

14. INSTRUCTIONS—*duty of court as to giving of, upon his own motion.* A court is under no obligation to instruct the jury upon his own motion, notwithstanding one party has asked no instructions and those asked for the other have all been refused, unless, perhaps, the court has been requested so to instruct the jury, has refused, and such refusal has been excepted to.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed January 19, 1904.

CHESTER M. DAWES and PECK, MILLER & STARR, for appellants.

JOHN S. WINTER, CRATTY BROS., JARVIS & CLEVELAND, and CLEVELAND & CONOVER, for appellees; CHESTER E. CLEVELAND, of counsel.

Statement by the Court. This is an appeal from a judgment rendered in favor of appellees for the use of appellee Skinner against appellant, for $44,491.95, in a suit brought on the 26th day of August, 1892.

A former trial resulted in a judgment for appellant which was reversed by the Appellate Court (Skinner v. Osgood, 83 App. 454). The statement preceding the opinion shows the transactions out of which the litigation arises, and sets out *in haec verba* the contract of August 1, 1890, and appellant's letter of August 27, 1890, upon a breach of which two instruments the suit is particularly based. The statement also shows a prior memorandum of contract, and the notice caused to be served upon appellant by appellees whereby he was notified that they desired him to purchase and pay for the stock "as per contract." Appellant performed the contract of August 1 in all respects except that he refused to purchase and pay for the 325 shares of stock which constituted appellee Skinner's share. He placed his

refusal on the grounds that the contract was illegal, as one for an option only, and that Skinner in violation of an agreement not to do so, had engaged in the coal business after the making of the contract sued on.

There was no tender of the stock to appellant before the last trial. Appellees offered no proof of damage sustained by Skinner by reason of appellant's breach. The judgment is not for the difference between the value of the stock and the price appellant had agreed to pay for it, but it represents such price less some dividends paid to Skinner and for which the jury gave credit to appellant.

The suit involves only the question of the right of appellees to recover for the use of appellee Skinner the price of the 325 shares of stock received by Skinner. The 325 shares received by appellee Emerson are not involved.

Mr. Justice Stein delivered the opinion of the court.

First. The question whether the contract is for an option and therefore illegal, under section 130 of the Criminal Code, has again been fully and ably argued. We see no occasion for departing from the ruling of the court in Skinner v. Osgood, *supra*. Since then the Supreme Court has, in Ubben v. Binnian, 182 Ill. 508, and in Loeb v. Stern, 198 Ill. 371, reaffirmed the views to which it gave utterance in Wolf v. National Bank of Illinois, 178 Ill. 85. We regard the contract at bar as one under which appellees took the stock as merely a temporary mode of payment for a part of the properties transferred by them to appellant with the privilege of determining thereafter whether they would retain the stock or prefer to be paid in cash to the extent of its par value.

Second. We also agree with what is said in the former opinion as to the sufficiency of the notice given appellant to purchase and pay for the stock. Notwithstanding the mistake in inserting " 625 " instead of 650 shares, it is plain from the entire contract that 650 shares were meant. In addition to the authorities cited in the former opinion in support of the rule that an instrument is to be read accord-

ing to the obvious intention of the parties in spite of clerical errors or omissions which can be corrected by perusing the instrument, we cite Sisson v. Donelly, 36 N. J. Law, 432, 439; 2 Parsons on Contracts, 6th Ed., *514, 515. The proof shows, and it is not denied, that before the arrival of the time fixed by the contract for appellant's performance he repudiated it and refused to carry it out, and there is no proof that he changed his attitude in that regard. On the contrary, there is proof that he adhered to it ever since. At the trial he did not accept the stock then tendered to him. Under such circumstances it is, to say the least, doubtful whether he was entitled to any notice. By refusing to perform he waived it. Scott v. Beach, 172 Ill. 273, 278. Again, while he admits receiving the notice, he himself on three different occasions made no objection to it but apparently regarded it as sufficient, and simply claimed that the contract was void and repudiated its provisions.

Third. Following Clark v. Weis, 67 Ill. 438, and Manistee Lumber Co. v. Union National Bank, 143 Ill. 490, we do not think that under the language of the contract an actual tender of the stock to appellant was required. It was sufficient that appellees were ready, willing and able to deliver it to him. But if a tender was necessary, he waived it by his repudiation of the contract. Had the stock been tendered to him he would have refused it. The law does not require a useless act. Scott v. Beach, *supra;* Lyman v. Gedney, 114 Ill. 388; Loeb v. Stern, *supra;* White v. Thomas, 39 Ill. 227; McPherson v. Walker, 40 Ill. 371; Cummings v. Tilton, 44 Ill. 172; Smith v. Gillett, 50 Ill. 291; Gorham v. Parson, 119 Ill. 425.

In McPherson v. Walker, *supra,* it was held that "upon a contract of sale of oats to be delivered, at the buyer's option, in a certain specified time, if prior to the expiration of that time the purchaser informs the seller that he will not accept the oats within such time, that is a waiver of the necessity of a tender of the oats by the seller."

In White v. Thomas, *supra,* p. 32, the court say: "The law never requires the performance of a useless act. If

appellant placed it beyond his power to perform his part of the contract by selling the cattle before the time expired at which appellee was to elect when he would receive them, then a demand would have been useless, and being useless he was not required to make it. Nor was he for the same reason bound to make a tender of the price. He was only bound to show that he was ready and willing to perform on his part to entitle him to recover."

And it is immaterial in this connection whether appellee Skinner learned of appellant's repudiation before October 1, 1891, that being under the contract the last day that appellant had to perform. It makes no difference why Skinner did not tender the stock so long as Osgood would not have accepted it. There is, however, proof that on September 17, 1891, appellant told appellee Emerson, who was then acting for himself and appellee Skinner, that he would not perform. So, also, it is immaterial that appellees did not accept appellant's repudiation as a breach of the contract, but on the contrary kept it alive and are now suing for its performance. See the first three of the authorities last cited.

No count in the declaration alleged a waiver of the tender or an excuse for not making it. For that reason it is now urged that the proof of tender was improperly admitted. No such objection was in terms made in the trial court. Such objection was made on the ground of variance, or of insufficiency of pleadings. No instructions were asked on that theory, nor was the objection specifically made upon the motion for a new trial, nor in the motion to direct the jury to find for appellant. Had the objection been pointed out in the trial court, it could have been obviated by amendment. It is too late to make it here for the first time. Precisely the same thing is true of the objection based upon an alleged misjoinder of plaintiffs. It is claimed that the contract sued on, while joint in favor of appellees as originally drawn, was severed as to them by appellant's letter of August 27, 1890, appearing in the statement in 83 App. 454, and that therefore the amended counts of the declaration should have proceeded in the name

of appellee Skinner as sole plaintiff and not jointly in the names of both appellees for Skinner's use. Without passing upon this contention, it is sufficient to say that it was not made or in any way pointed out in the court below, where, if well taken, it could have readily been met by an appropriate amendment. That such an objection cannot prevail when made for the first time in the reviewing court has been held so often as to render any citation of authorities quite needless.

Fourth. In order to make good his pleas of set-off, appellant testified:

"I stated to Emerson and Skinner that I wanted them to agree that they would not go into the coal business again; that it was an important element in the transaction because * * * they could be serious competitors. I put nothing of the kind in the contract, but wanted them to give me their word of honor as business men that they would stay out of the coal business, having sold their property to me, and they both answered they hadn't the slightest intention and would agree not to enter into the coal business in that part of the country where their business would come in competition with that which they had just sold me. * * * This conversation took place right at the time of the transfer of the contract itself, but prior to transfer of any of the papers connected with carrying out the contract. It was before the payment of the $10,000 and the delivery by me of the two notes for $12,500 each. * * * I told them it had been my understanding all along that that was the agreement. But I hadn't put anything into the contract because I didn't know whether a contract of that kind would be binding and I wanted their obligation, their word of honor to me in the matter, and I would be satisfied with the agreement that they would make in that way with me, independently of a written contract. I said that was my understanding and they said it was theirs, part of the original agreement to that extent. The money was paid and the papers delivered after this oral agreement was made."

On cross-examination appellant said:

"I told them I wanted their word of honor not to go into the coal business again. * * * I deliberately left it (the oral understanding) out of the written agreement.

Osgood v. Skinner.

I told them I had the question in my mind whether it might be a legal contract or not, that I didn't know whether such an agreement was contrary to public policy and therefore didn't put it in the contract, but I wanted them to make that contract with me as men of honor, then and there."

Appellant testified further that the oral agreement was that appellees were not to go into the coal mining business "for either five or ten years. I think the period was ten years."

On motion of appellees, the court struck out the foregoing testimony of appellant and refused to admit proof of an alleged breach by appellee Skinner of the oral agreement, on the ground that the same created a moral obligation only and was not intended to create a legal one. In other words, the court held as matter of law that appellant's testimony disclosed only a moral obligation resting upon the parties. While it is true that his language tended strongly in that direction, yet it cannot by any means be said that it leaves no doubt upon the subject. There was room for argument before the jury that notwithstanding what the witness had said about wanting appellees' "word of honor," the intention of the parties was to enter into a binding agreement. So long as their intentions in that regard were not absolutely clear and wholly removed from the realm of controversy, it was a question of fact for the jury what kind of an obligation the parties had in view and did in fact enter into. Furthermore, other witnesses testified to admissions of all the parties that the agreement had been made and these admissions did not contain anything about its being simply a matter of honor. According to one witness, appellant said to appellees: "Now it is understood and agreed that you men are not to go into business again on the Buda and Rushville branch." The same witness said:

"It (the oral agreement) was referred to * * * at both interviews and was definitely agreed after the signing of the other contract in the case, and the agreement was again repeated after the exchange of the papers at the second interview."

In view of all the testimony, we are clearly of opinion that the question whether there was a binding agreement by the terms of which appellees were not to go into the coal business for a certain length of time, was one to be passed upon by the jury.

The rejection by the court of the proof of the parol agreement is sought to be justified upon two other grounds, to-wit, that it varies or adds to the written contract of the parties, and that the agreement was void under the Statute of Frauds because not to be performed within one year.

On behalf of appellant it is contended that the oral agreement of appellees not to engage in the coal business was an independent engagement and collateral to the written contract, and therefore does not come within the rule that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument. An examination of the many cases cited by counsel shows that in nearly all it appeared on the face of the written contract or from the surrounding circumstances that it did not purport and was not intended to represent all the engagements of the parties, for which reason proof of the oral agreement was held proper. Thus in Welz v. Rhodius, 87 Ind. 1, S. C., 44 Am. Rep. 747, the agreement was for the sale of hotel furniture and a lease of the building. There was no written contract covering the terms of the sale. The only writing was a lease executed in part performance of the general oral agreement. It appears, however, from subsequent rulings of the Supreme Court of Indiana that even Welz v. Rhodius is regarded as an exceptional case; for in Reynolds v. Ry. Co., 143 Ind. 579, they say:

"We are rather inclined to limit than extend the doctrine as laid down and applied in Welz v. Rhodius, 87 Ind. 1, and to adhere to the older as well as the more recent cases which we have referred to in support of this opinion."

And they quote with approval from other Indiana cases which hold it to be " the well established rule that when a contract is reduced to writing the legal presumption is that the entire contract as finally settled is embraced therein,

and all oral negotiations or stipulations between the parties which preceded or accompanied the execution thereof, are to be regarded as merged in it, and it is to be treated as the exclusive medium of ascertaining the contract by which the parties bound themselves" (citing cases). "When a contract has been finally committed to writing all prior negotiations and stipulations of the parties are merged in the writing, and to that alone can the court refer to determine their rights and obligations" (citing cases).

Finally they quote the rule as laid down by Prof. Greenleaf in his first volume on Evidence, section 275 : "When parties have deliberately put their engagements into writing in such terms as import a legal obligation without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking were reduced to writing; and all oral testimony of a previous colloquium between the parties, or of conversations or declarations at or before the time when it was completed, is rejected." In another Indiana case, Western Paving & Supply Co. v. R. R. Co., 128 Ind. 525, the court, speaking of Welz v. Rhodius, say : "The doctrine as announced in that case has, however, been so modified by later decisions of this court that it is not now to be regarded as unquestioned authority."

In Reynolds v. Hassam, 56 Vt. 449, cited by appellant's counsel, the parties made an oral agreement for the sale of some lumber, and at the same time, and as a part of the same transaction, the plaintiff gave the defendant a chattel mortgage on the lumber and other property to secure the delivery of the lumber. It was held the defendant might prove by parol that he was not bound to receive and pay for the lumber, the court saying, this does " not conflict with the rule that when a contract is in part in parol and in part in writing the writing is conclusive as to what it contains. * * * Its (the mortgage's) object was not to set forth a contract but to secure the performance of one resting in parol. * * * It is conceded the writing did not

contain the whole contract." Of the same general character are Ewaldt v. Farlow, 62 Ia. 212; Beinau v. Smart, 30 Tenn. 308; Doty v. Martin, 32 Mich. 462.

To analyze and distinguish all the cases cited by counsel would unduly extend this opinion. We have examined every one and find that they do not control the case at bar because with the exception of those decided by the courts of Maryland and Pennsylvania (where the rule as stated by Greenleaf does not seem to be in force or has been widely departed from) the facts and circumstances were such as to exclude the application of the rule. In Illinois, the rule has always been in full force. Lane v. Sharpe, 3 Scam. 565; Cook v. Whiting, 16 Ill. 480; Marshall v. Gridley, 46 Ill. 247; Ins. Co. v. Morrison, 62 Ill. 242 (opinion by McAllister, J.); Emery v. Mohler, 69 Ill. 221; Platt v. Ins. Co., 153 Ill. 113; Graham v. Sadlier, 165 Ill. 95; Town of Kane v. Farrelly, 192 Ill. 521; Clark v. Mallory, 185 Ill. 227; Tichenor v. Newman, 185 Ill. 264. In Lane v. Sharpe, *supra*, the court say:

"It is true, matter collateral to the writing may be proved by parol but it must not change the terms of the contract or increase or diminish the liabilities of the parties."

In Platt v. Ins. Co., *supra*, after quoting this passage, the court continue:

"This qualification of the rule is aptly expressed in Abbott's Trial Evidence, p. 295, thus: 'Where it appears that the instrument was not intended to be a complete and final statement of the whole transaction, and the object of the evidence is simply to establish a separate oral agreement on a matter as to which the instrument is silent and which is not contrary to its terms nor to their legal effect, oral evidence is not excluded.'"

This exception to the rule is stated in nearly the same language and to the same effect in Town of Kane v. Farrelly, *supra*, p. 525.

In the case before us the parties at first signed a preliminary instrument dated July 28, 1890, briefly stating the terms agreed on and expressly stipulating that appellant

should deliver to appellees "an agreement obligating himself to purchase from " them the stock in question and that "the parties hereto agree to execute such further writings or agreements as may be necessary to carry out the objects of this agreement." Accordingly, three days later, a more formal contract was drawn and executed which carried out and in part superseded the previous one, and forms the basis of this suit. There is everything in the circumstances of this case to justify the inference that the last writing was intended by the parties to be a complete and final statement of the whole agreement between them. They deliberately and solemnly put their engagements into a sealed writing without any uncertainty as to their object or extent, and it must be conclusively presumed, and they thereby agreed, that all antecedent or contemporaneous propositions and efforts to make the contract, which are not embraced in its terms, should be rejected as forming no part of it. As said by our Supreme Court in Graham v. Sadlier, *supra*, p. 98:

"When parties after whatever previous preparation reduce their agreement to writing such written agreement is 'the final consummation of their negotiation and the exact expression of their purpose.' What has preceded it, if not incorporated into it, is regarded as intentionally rejected."

This conclusive presumption is, singularly enough, borne out and the wisdom of the rule vindicated by appellant when he testified that the promise of appellees not to engage in the coal business was "deliberately" omitted from the written contract because of the belief that it was illegal and opposed to public policy. The promise furthermore rested upon the same consideration as the written contract and grew out of the same transaction and was not "independent" of it as claimed by counsel.

So far as the Statute of Frauds is concerned, it does not avoid the parol agreement, notwithstanding the same was to remain in force for longer than one year. Where the agreement by some contingency such as death or otherwise is capable of being fully performed within a year and is not simply terminated by the death of the party, it is not within the

statute.   Curtis v. Sage, 35 Ill. 22; White v. Murtland, 71
Ill. 250; Fraser v. Gates, 118 Ill. 99; Doyle v. Dixon, 95
Mass. 208; Browne on Statute of Frauds, Secs. 275, 276,
*et seq.*   If appellees had died during the first year, their
agreement not to compete with appellant would have been
completely performed.  There was nothing further to be
done.   It was a personal engagement on their part and did
not extend to their heirs or legal representatives.   The Illi-
nois cases cited by counsel for appellees are not in point.
The contracts there passed upon were within the ban of the
statute because they provided for *ordinary* services to be
rendered for a term of years.   If the party who was to
render them had died during the first year the contract to
be sure would have terminated, but it would have been only
partly performed.

Fifth.   Under the contract sued on the title to the stock
vested in appellees.   Appellant upon being notified as
therein provided agreed to purchase it from them and pay
for it at a certain time in the future.   It was an executory
sale, the title to the stock remaining in appellees until appel-
lant would accept it from them.   Where the sale is exe-
cuted, that is, where the title to the thing sold has vested
in the purchaser and he refuses to accept it, one of the
vendor's remedies is to store it for the purchaser, notify
him thereof and sue him for the price he agreed to pay.
Bagley v. Findlay, 82 Ill. 525; Ames v. Moir, 130 Ill. 582.
Counsel for appellant claim that this rule does not apply to
an executory sale and that in such case if the purchaser re-
fuses to accept he can be held only for the excess, if any,
of the contract price over the market value.   No such ex-
cess having been shown, it was upon this view that coun-
sel requested the court to instruct the jury that appellees,
if they recovered, were entitled to nominal damages only.

As has already been pointed out, under the contract ap-
pellees received the stock as temporary payment of the
properties they had sold and conveyed to appellant.   They
had their privilege of calling upon him to take back the
stock and pay them its par value.   If they availed them-

selves of the privilege it was clearly the intention of the parties that the one should recover from the other the price he had agreed to pay for the stock and not merely the difference between such price and its market value. In other words, the agreement was that appellees should have specific performance. This the jury have awarded.

A similar result was reached in Wolf v. Nat'l Bank, 178 Ill. 85, where the bank having sold stock to Wolf, agreed to buy it back at a certain price if he should so elect. So far as appears the bank did not even raise the question of the measure of damages and seems to have been satisfied that, if liable, it was liable for the full contract price.

Sixth. Appellees submitting no instructions, and all those asked by appellant being refused, the jury were not in any way instructed as to the law of the case. It is now contended that it was the duty of the court to have given instructions of its own and that it erred in not doing so. Counsel cite various cases from other states which so hold, but they are based upon statutes materially different from our own and by their language imposing this duty upon the court.

Our statute (sec. 52 of the Practice Act) provides: "Hereafter no judge shall instruct the petit jury in any case, civil or criminal, unless such instructions are reduced to writing." Sec. 53 reads: "And when instructions are asked which the judge cannot give, he shall on the margin thereof write the word 'Refused,' and such as he approves he shall write on the margin thereof 'Given;' and he shall in no case after instructions are given qualify, modify or in any manner explain the same to the jury otherwise than in writing."

It is not claimed and it cannot be that these sections require the judge to charge the jury of his own accord. His duty is to pass upon the instructions which he is requested to give. No court in this state has ever held that his duty in a civil case is more than this, and we are not prepared to say that it is greater even in a criminal one. Counsel have quoted divers utterances of our courts which wrested

from their context apparently lend some color to their contention; but an examination of the cases reveals that the language was used with reference to other questions and that the one at bar was not in the mind of the court.

"It is a rule in the law of procedure recognized and enforced in all jurisdictions that in civil cases the judge is not bound to give his opinion to the jury upon any matter of law arising upon the evidence unless requested to do so by one of the parties, * * * and the failure to instruct them cannot be assigned for error." 2 Thompson on Trials, sec. 2338. In sec. 2341, the learned author says:

"It is then a general rule of procedure, subject in this country to a few statutory innovations, that mere *non-direction* (the italics are the author's), partial or total, is not ground of new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused."

The rule in this state is as above stated. In Drury v. Connell, 177 Ill. 43, it is said:

"The court seems to have given all instructions asked by contestants on the subject of undue influence, and no instruction of this kind was asked for. If they desired to present the question * * * they should have asked for an instruction presenting their view of the law. The court was not in error in failing to give an instruction not asked for." And see McKeown v. Dyniewicz. 83 Ill. App. 512; Plant v. Young, 38 Ill. App. 102; Knickerbocker Ice Co. v. DeHaas, 37 Ill. App. 195.

Appellant is not in a position to urge the alleged error. It does not appear that he requested the court to prepare and give any instructions of its own. Had he done this and taken an exception in case of refusal, he might have raised the point.

The views expressed in this opinion render it unnecessary to pass specifically upon the refused instructions.

The judgment appealed from is affirmed.

*Affirmed.*