Thomas Moulding *et al.*

*v.*

George C. Prussing *et al.*

1. CONTRACT—*void for uncertainty and repugnancy.* On the sale and purchase of brick, the parties, on the same day, made the following memoranda: "Bought 500,000 of good, merchantable brick from Messrs. A and B, to be delivered on Wabash avenue, just south of Van Buren street, at the rate of $6.37 per thousand, to be delivered this fall. A & B." And the other parties executed and signed the following: "Sold 50,000 good, merchantable brick to C & D, just south of Van Buren street, at $6.37½ per thousand; said C & D agree that we shall commence to deliver on Wednesday next, or agreement is of no account. C & D:" *Held,* that the memoranda, when separately considered, showed no sale, because, by the terms used, each party contracted with themselves, and taken together, were void for uncertainty and repugnance, and failed to express any contract.

2. PAROL EVIDENCE—*to explain written contract.* Parol testimony is inadmissible to show that certain written memoranda are contracts, and supply their terms, but the writings must be construed by themselves.

3. SAME—*of contract attempted to be expressed in writing, but which is void for uncertainty.* Where a contract, as reduced to writing, is void or unintelligible from any cause, parol evidence may be received under appropriate special counts, to prove the verbal contract.

4. SAME—*of the verbal understanding aside from writing.* The rule holding, when parties reduce their agreement to writing, that all antecedent verbal agreements in reference to the matter are merged, and it must alone govern, has reference to legal and valid agreements, and not to those which are void or wholly unintelligible.

152          MOULDING *et al. v.* PRUSSING *et al.*          [Sept. T.

Opinion of the Court.

5. This is not the case where the contract is required to be in writing, as, under the Statute of Frauds.

6. CONTRACT—*waiver of condition by subsequent part performance.* If a contract to deliver a lot of brick is to be of no account unless the seller is permitted to commence delivering by a certain day, and he, after such day, delivers a part, this will be a waiver of his right to avoid the agreement, and when sued for not delivering the balance, he can not avoid liability on the ground he was prevented from commencing on the day named.

7. SAME—*performance not excused by direction of an agent having no authority.* A party will not be excused for not delivering brick to another under his contract, from the fact that such other party's foreman directed him to stop, without authority from his employer to do so.

8. INSTRUCTIONS—*must be applicable to the evidence.* It is not erroneous to refuse an instruction not applicable to the evidence, though it may contain a correct legal proposition:

APPEAL from the Superior Court of Cook county; the Hon. THEODORE D. MURPHY, Judge, presiding.

This was an action of assumpsit, by George C. Prussing and Charles G. Mueller, against Thomas Moulding and Edward Harland, for the alleged breach of a contract for the sale and delivery of a lot of brick. The opinion of the court presents the material facts of the case.

Messrs. SCATES & WHITNEY, for the appellants.

Messrs. NISSEN & BARNUM, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellees sued appellants in the Superior Court of Cook county, for the breach of a contract to deliver 500,000 good, merchantable brick, under a contract to sell and deliver, at $6.37 per thousand, at Wabash avenue, just south of Van Buren street, Chicago, Illinois, to be paid for on delivery. It is claimed that but 35,000 were delivered, and a refusal to deliver the balance, 465,000, under the contract. A trial was had, resulting in a verdict and judgment in favor of

plaintiffs for the sum of $2392.50, from which defendants have appealed.

On the trial, it was proved 'that at the time the contract was entered into, each party intended to write in his memorandum book a statement of the terms of the contract, as he understood it. They were signed by the parties, and are as follows:

" CHICAGO, *August* 30.

" Bought 500,000 of good, merchantable brick from Messrs. Moulding & Harland, to be delivered on Wabash avenue, just south of Van Buren street, at the rate of $6.37 per thousand, to be delivered this fall.    MOULDING & HARLAND."

"*August* (Wednesday,) 30, 1871.

"Sold 50,000 good, merchantable brick to Prussing & Mueller, just south of Van Buren street, at $6.37½ per thousand. Said Prussing & Mueller agree that we shall commence to deliver on Wednesday next, or agreement is of no account.
" PRUSSING & MUELLER."

It will thus be seen that the terms of the agreement are left indefinite and uncertain from these two writings. They differ no less than 450,000 in the number of bricks to be delivered; they differ one-half of a cent in the price per thousand.   One states the brick were to be delivered that fall; the other, that they were to commence the next Wednesday, or the agreement to be "of no account." The two papers are so essentially different in their terms, that no ingenuity can possibly reconcile them.   The terms are repugnant and wholly inconsistent.

If we were to consider that signed by appellants, it is nonsensical, because the purchase is from themselves.   The memorandum says so, and it can not be tortured into any other meaning.   If the other be examined by itself, then appellees sold the brick to themselves, and the contract can bear no other meaning.   When' considered separately, they are nonsensical, and when examined together they are no

more intelligible, and are also entirely repugnant, one to the other.

. If it, however, were contended that verbal testimony can be resorted to, in aid of these written memoranda, for the purpose of showing that they were contracts and to supply the terms of the agreement, the numerous decisions of this court, based upon long and well recognized rules, forbid it. Verbal evidence can not be heard to vary, enlarge, alter or explain a written contract. It speaks its own language, and must be construed by what it says. It can not rest partly in written, and partly verbal evidence. These memoranda were read in evidence, but they did no harm, as they proved nothing pertinent to the issue in this or any other case.

But the question arises, whether, outside of, and independently of, the written memoranda, appellees may prove a verbal contract for the sale of the brick, and its breach. We have no doubt they may, under an appropriate special count, several of which seem to have been filed in this case. As an objection to this view, it is urged that when parties reduce their agreement to writing, all antecedent verbal agreements in reference to the matter are thereby merged in the writing, and it must govern; and the parties in this case having made these written memoranda to evidence the contract, that the terms of the agreement can not be proved by verbal evidence. This is, no doubt, true of all legal and valid agreements, but is not with reference to void or unintelligible contracts. Nor does it matter from what cause they are void. : To hold in this case that a recovery could not be had on the verbal agreement, because these memoranda are void for uncertainty, and then to hold that the writings were void, and were incapable of explanation, and no suit could be maintained on them, would be a reproach to the law that it does not deserve. To so hold would be to say that, where parties are capable, and endeavor to contract in reference to a lawful subject, and who supposed they had contracted, and one of them actually entered upon the performance of the

contract, had not made any agreement, and all for the want of skill to make writings expressing their agreement.

This is unlike a contract under the Statute of Frauds, as in that case, if the written contract is void, the agreement can not be established by verbal evidence, because the contract must be evidenced by writing. The authorities to which we have been referred, seem to recognize this rule.

The evidence of Prussing and Moulding, who made the contract, does not vary materially in the version of its terms. They establish the agreement as set out in a part of the counts in the declaration. But it is claimed by Moulding that the contract was violated because he could not begin to deliver at the time agreed upon. A complete answer to this is, that he and his partner delivered 35,000 bricks after the time, and continued to deliver up till the fire of October, 1871, occurred. But it is urged, the father of Moulding delivered the brick without his knowledge. But the father says he knew of the contract the day it was made, or the next day, and that he had the brick delivered under the contract. It appears that he was the delivery clerk, and that these bricks were delivered as was usually done, although he says he was not told to deliver them. Had appellants intended to declare the contract at an end, it is almost certain that they would have directed their clerk not to deliver under the contract. We think that the evidence warranted the jury in finding that appellants entered upon the performance of the contract, notwithstanding the day for their commencing had passed, and that they had waived the time for commencing.

It is insisted that appellees put an end to the contract by their agent stopping a further delivery. Two or three witnesses say, the foreman, on Saturday before the fire, directed them to bring no more brick, and that they, for that reason, hauled no more. Prussing, however, swears that the foreman had no authority to prevent the men from delivering brick, and that they could have continued to deliver, and the jury must have believed him.

We perceive no error in giving or in refusing instructions. Although a portion of defendants' refused instructions may have contained legal propositions, they were properly refused, because they were not applicable to the evidence.

The verdict is fully sustained by the evidence. The amount the jury found was, no doubt, based on a calculation at $12 per thousand for the portion not delivered, from which was deducted the contract price for that number, and the contract price for those which were delivered, which would give something more than the amount of the verdict.

Perceiving no error in the record, the judgment of the court below is affirmed.

*Judgment affirmed.*