## United Romanian Meat Market and Grocery Store, Appellee, v. Louis Abramson, Appellant.

### Gen. No. 6,780.

1. APPEAL AND ERROR, § 270*—*what order is interlocutory and not appealable.* An order overruling a demurrer to a bill for an injunction and an accounting is an interlocutory order and not subject to review on an appeal from an order granting a temporary injunction.

2. GOOD WILL, § 1*—*what constitutes.* The good will of a business is the benefit which arises from its having been carried on for some time in a particular place, or by a particular person, or from the use of a particular trade-mark.

3. GOOD WILL, § 1*—*what is value of good will.* The value of the good will of a business consists in the probability that the customers of the old firm will continue to be customers of the new.

4. GOOD WILL, § 2*—*when transferable.* The good will of a business may be transferred from one person to another as an entity distinct from the business.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

578     APPELLATE COURTS OF ILLINOIS.

United Romanian M. M. & G. Store v. Abramson, 218 Ill. App. 577.

5. GOOD WILL, § 1*—*what is nature of good will.* The good will of a business ordinarily passes as an incident of the business when the business is sold and transferred.

6. SALES, § 1*—*how existence of sale is determined.* Whether the agreement of two persons with reference to a sale constituted the sale and transfer of the business of one to the other is to be determined from and controlled by the language of the written bill of sale containing their agreement.

7. SALES, § 61*—*how intention of parties is determined.* The law looks to what the parties express in a contract of sale as their real intention.

8. EVIDENCE, § 319*—*when contract cannot be varied by parol evidence.* A contract which has been reduced to writing cannot be added to or varied by parol or extrinsic evidence.

9. GOOD WILL, § 2*—*when good will is not transferred by sale of business.* A written bill of sale whereby the owner of a business transfers to another all the personal property used in the operation of the business, no language being used to indicate the transfer of any business or good will, will not be construed as transferring the business and good will.

10. CONTRACTS, § 216*—*how contract with restriction against engaging in business is construed.* A covenant not to engage in a certain business in a specified territory for a stated period is in restraint of trade and must be strictly construed with reference to any right claimed thereunder.

11. INJUNCTION, § 183*—*when verification is necessary.* To entitle one to a temporary injunction, all the material facts alleged in his bill, including those alleged in an amendment to the bill, must be properly verified by affidavit.

Appeal from the Circuit Court of Kane county; the Hon. C. F. IRWIN, Judge, presiding. Heard in this court at the April term, 1920. Reversed. Opinion filed May 7, 1920. Rehearing denied June 25, 1920.

THADDEUS J. MERRILL and ALSCHULER, PUTNAM & FLANNIGEN, for appellant.

PEFFERS & WING, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The United Romanian Meat Market and Grocery Store, a corporation, as complainant, filed a bill in equity in the circuit court of Kane county against the appellant, Louis Abramson, as defendant, praying for an injunction to restrain him from engaging in the meat business within five blocks of its place of business, namely No. 70 North Broadway, in Aurora; also praying for an accounting. Afterwards the appellee obtained leave to file an amendment to the bill, and an amendment was filed. The appellant thereupon demurred to the bill as amended, and the demurrer was overruled, and then upon the motion of the appellee the court ordered a temporary injunction to issue in accordance with the prayer of the bill. From the order for the temporary injunction as well as the order overruling the demurrer, the appellant prosecutes this appeal. The order overruling the demurrer being an interlocutory order, is not subject to review on this appeal. We shall therefore confine our consideration of the case to the question raised concerning the appellee's right to a temporary injunction, which is based upon the facts which appear on the face of the bill. It appears from the bill that on February 10, 1919, and for some time prior thereto, the appellant Abramson conducted a retail meat business at No. 70 North Broadway in the City of Aurora, and on that day made a bill of sale to Louis Kish and Griogor Mateiu by which he sold and transferred to the parties named, certain goods and chattels which are specified in a bill of sale, including meats, canned goods, counters, shelves, meat blocks, scales, knives and other implements used in the meat business, and a heating stove, all located at 70 North Broadway. The bill of sale also contained the following covenant: "And in consideration of the purchase of the above described goods and chattels, said Louis Abramson agrees not to engage himself in the meat business within five blocks of said store for a period of five

years,'' The purchasers took immediate possession of the goods and chattels sold and transferred to them, also took possession of the store in which the chattels and goods were located, and conducted a meat business at the same place for about a month thereafter. Thereupon Kish, one of the parties to whom the sale had been made, sold out his interest to his partner Mateiu, who continued in the business until July 19. On July 19, Mateiu made a bill of sale to the appellee, which is as follows:

"Know All Men by These Presents, That the Undersigned Griogor Mateiu of the City of Aurora in the County of Kane and State of Illinois, party of the first part, for and in consideration of the sum of Two Thousand Four Hundred and Ninety-two Dollars, lawful money of the United States of America, to be paid, by the United Romanian Meat Market & Grocery Store, a corporation, of the second part, has granted, bargained, sold and delivered, and by these Presents does grant, bargain, sell and deliver, unto the said party of the second part, all the following Goods, Chattels, and Property, to-wit:

"4 counters (3 of them with glass covers) with marble tops; 2 counter-scales; one ice-box; 5 meat blocks; one slicing machine; one sausage stuffer; one platform scale; one lard press; one smoke house; four meat hangers; one lard kettle; six tin boxes; one McKaskey register system; one looking glass; one bench; one clock; one awning; two gas lamps; one step ladder; 2 back benches; 2 cleavers; 2 small knives; 2 large knives; 2 wash tubs; one grind-stone; one heating stove; one chicken coop; all shelving; also all meats, canned goods, groceries and merchandise, fixtures and all personal property owned in and by me used in the operation of my meat-market and grocery store at No. 70 N. Broadway, Aurora, Illinois.

"The consideration, $2,492.00, above mentioned, to be paid as follows: The sum of Six Hundred Ninety-two Dollars has been hereto paid; the said United Romanian Meat Market and Grocery Store hereby assumes and agrees to pay Four Hundred Dollars to Loui

Hudei, and Four Hundred Dollars to Mike Codrina, and the balance, namely, One Thousand Dollars, to be paid by note with approved sureties.

"To Have and to Hold the said Goods, Chattels and Property unto the said party of the second part, its heirs, executors, administrators and assigns, to and for its own proper use and behoof, forever.

"And the said party of the first part does vouch himself to be the true and lawful owner of the said goods, chattels and property, and have in his full power, good right and lawful authority, to dispose of the said goods, chattels and property, in manner as aforesaid; and he do for himself, his heirs, executors and administrators, covenant and agree to and with the said party of the second part, to warrant and defend the said goods, chattels and property to the said party of the second part, its executors, administrators, and assigns, against the lawful claims and demands of all and every person and persons whomsoever.

"In Witness Whereof, I have hereunto set my hand and seal the........day of July in the year One Thousand and Nine Hundred and Nineteen (1919).

Signed  Griogor Mateiu.  (seal)"

The appellee, upon the delivery of the bill of sale, took possession of the goods, chattels and property therein described, and continued in the meat business at the same place; and was in the conduct of such business at the time of the filing of the bill of complaint.  In August, 1919, the appellant, Abramson, again opened and established a meat market at No. 48 North Broadway, which is within five blocks of the appellee's place of business.

The main question presented for determination on this appeal is whether the appellee is entitled to the benefit of the covenant in the bill of sale to Kish and Mateiu, by which the appellant bound himself not to engage in the meat business within five blocks of the store where he had been conducting his business. The covenant in question has reference to the good will

582     APPELLATE COURTS OF ILLINOIS.

United Romanian M. M. & G. Store v. Abramson, 218 Ill. App. 577.

of the meat business which appellant had established and was conducting at the store referred to. The good will of a business has been defined to be the benefit which arises from it having been carried on for some time in a particular place, or by a particular person or from the use of a particular trade-mark, and its value consists in the probability that the customers of the old firm will continue to be customers to the new. *Potter & Co. v. Wait,* 15 Ky. L. Rep. (Abst.) 60. And it has been treated as a distinct entity, as a subject of transfer from one person to another; but it is also held that if a business is sold and transferred from one person to another, the good will is transferred with the business as an incident to such business. *Public Opinion Pub. Co. v. Ransom,* 34 S. D. 381, 148 N. W. 838; *Gompers v. Rochester,* 56 Pa. 194; *Didlake v. Roden Grocery Co.,* 160 Ala. 484.

It is insisted by the appellee that by means of the bill of sale to Kish & Mateiu, the business conducted by the appellant at No. 70 North Broadway was sold and transferred to Kish and Mateiu; and that by means of the bill of sale from Mateiu to the appellee it succeeded to the same business and the good will, the good will being incidental to and a part of the business so transferred; and that the appellee is therefore entitled to the benefit of said covenant, which was made to protect the value of the good will. It becomes important, for a proper determination of the appellee's right, to ascertain whether the business of appellant was actually sold and transferred to the appellee. Inasmuch as the parties reduced their undertaking to writing by making the bills of sale, this question can be determined only from the instrument itself, and the language used therein must control. 9 Cyc. 577; *Walker v. Tucker,* 70 Ill. 527. It is clear from the terms and wording of the Mateiu bill of sale that it does not purport to sell or transfer anything but the goods and chattels therein specified and described; and there is no language which indicates

the transfer of any business or good will from the vendor to the vendee. While it may be true that the parties had such intention, the intention cannot be reasonably drawn from the language or the terms of the instrument. It is well settled that the law looks to what the parties expressed in a contract of sale as their real intention. 9 Cyc. 578; *Nichols v. Mercer,* 44 Ill. 250; *Benjamin v. McConnell,* 9 Ill. 536. And a contract which has been reduced to writing cannot be added to or varied by parol or extrinsic evidence. *Memory v. Niepert,* 131 Ill. 623; *Longfellow v. Moore,* 102 Ill. 289; *Kimball v. Custer,* 73 Ill. 389; *Moulding v. Prussing,* 70 Ill. 151; *Emery v. Mohler,* 69 Ill. 221; *Merchants' Ins. Co. v. Morrison,* 62 Ill. 242. The appellee contends that inasmuch as the bill of sale from Mateiu to the appellee transferred to it all the personal property used in the operation of his meat market and grocery store, that it is a matter of reasonable inference that Mateiu intended thereby also to sell and transfer his business and the good will. We cannot agree to this contention. Even if it is reasonable to draw the inference that the appellee bought the goods and chattels to use them in the meat business, this inference could not be drawn to the extent of assuming that he was thereby entitled to the trade established at the place where they were located. There is nothing in the Mateiu bill of sale which would prevent Mateiu from again establishing himself in the meat business, perhaps next door to appellee, and seek to regain his trade or customers; nor is there anything to indicate that appellee had the right even to take possession or continue in possession of the place where Mateiu had conducted the business. An intention on the part of Mateiu to sell the business and good will to the appellee with the goods and chattels sold, if such was his intention, could under these circumstances be established only by parol evidence; and parol evidence would not be

admissible for that purpose. The covenant in question being one in restraint of trade, must be construed strictly with reference to any right claimed thereunder. *Tarr v. Stearman*, 264 Ill. 110; *Wiggins Ferry Co. v. Ohio & M. Ry. Co.*, 72 Ill. 360; *M. M. Mitchell Co. v. Mitchell*, 134 Ill. App. 214.

For the reasons stated, we are of the opinion that the appellee was not entitled to the injunction ordered.

There is an additional reason, however, why the order granting the injunction cannot be sustained. The record discloses that the amendment to the bill contains matters material to the legal sufficiency of the bill and was not verified. It is indispensable to appellee's right to a temporary injunction that all the material facts alleged in its bill be properly verified by affidavit. *Christian Hospital v. People*, 223 Ill. 244.

The order granting the temporary injunction is reversed.

*Order reversed.*